1
2
3
4
5
6
7
8                **UNITED STATES DISTRICT COURT**
9               **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  JOSEPH BIELMA, FRANK URIARTE,        Case No.:  15cv1606-MMA (BLM)
    RUDY ALARCON, LUIS CASILLAS,
12  STEVEN GARCIA, GERMAN DURAN,         **ORDER GRANTING IN PART AND**
    GABRIEL RODRIGUEZ, ISAIAS           **DENYING IN PART PLAINTIFFS'**
    NAVARRO, and STEPHEN FRAZIER,       **AND DEFENDANTS' REQUESTS**
13                                       **FOR JUDICIAL NOTICE;**
14                          Plaintiffs,  **[Doc. Nos. 7-2, 15-2]**
15  v.
                                         **GRANTING DEFENDANTS'**
16  MICHAEL BOSTIC, CITY OF              **MOTIONS TO DISMISS;**
    CALEXICO, RICHARD WARNE,
17  GONZALO C. GERARDO, and             **[Doc. Nos. 7, 8]**
    MARITZA HURTADO,
18                                       **AND DENYING DEFENDANTS'**
                                         **MOTION TO STRIKE**
19                          Defendants.
                                         **[Doc. No. 9]**
20

21       On July 20, 2015, Plaintiffs Joseph Bielma, Frank Uriarte, Rudy Alarcon, Luis

22  Casillas, Steven Garcia, German Duran, Gabriel Rodriguez, Isaias Navarro, and Stephen

23  Frazier ("Plaintiffs") filed this action against Defendants Michael Bostic, City of

24  Calexico, Richard Warne, Gonzalo C. Gerardo, and Maritza Hurtado ("Defendants").

25  [Complaint ("Compl.").]  Except as to Defendant City of Calexico, Plaintiffs sue

26  Defendants individually and in their official capacities as employees of the City of

27  Calexico.  Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rules of

28

Civil Procedure[1] 12(b)(1) and 12(b)(6),[2] and move to strike Plaintiffs' Complaint pursuant to Rule 12(f) and California Code of Civil Procedure § 425.16.  [Doc. Nos. 7, 8, 9.]  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the following reasons, the Court **GRANTS** Defendants' motions to dismiss and **DENIES** Defendants' motion to strike. [Doc. Nos. 7, 8.]

<u>B<small>ACKGROUND</small></u>

Plaintiffs allege the following in their Complaint.[3]  Plaintiffs Uriarte, Alarcon, Casillas, Garcia, Duran, Rodriguez, Navarro, and Frazier ("Plaintiff Officers") are or were police officers employed by Defendant City of Calexico ("Defendant City") during the events alleged in the Complaint.  Plaintiff Bielma is a former peace officer. Defendant Bostic was and is the chief of police for Defendant City and the Calexico Police Department.  Defendant Warne was the city manager.  Defendant Gerardo was and is a police lieutenant for the City and the police department.  Defendant Hurtado was a City Council member for the City.

Plaintiff Officers allege they occupied either leadership roles with the Calexico Police Officer's Association ("CPOA"), or "were associated with such leadership." [Compl. ¶ 9.]  Prior to November 2014, Plaintiff Officers "enjoyed a successful working relationship with the City and the majority of its officials."  [*Id.*]  They were politically active, spoke out at City Council meetings, met with city officials to discuss issues regarding the police department and the city, and "their individual and collective voice was heard."  [*Id.*]  Plaintiff Officers "[brought] to light actual corruption, mismanagement and disruption within the Department and the City."  [Compl. ¶ 13.]

---

[1] Any further reference to "Rule" refers to a Federal Rule of Civil Procedure unless otherwise noted.
[2] There are two pending motions to dismiss.  [Doc. Nos. 7, 8.]  Defendant City filed one motion to dismiss, which the individual defendants joined.  [Doc. Nos. 7, 10.]  The individual defendants filed the other motion to dismiss.  [Doc. No. 8.]
[3] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

"In the run up to the November 2014 City Council election, the Plaintiff Officers . . . actively opposed the re-election of one City Council member, Hurtado, and opposed the election of another." [Compl. ¶ 16.] "Around this same time, Hurtado . . . began to engage in retaliatory actions." [Compl. ¶ 18.] Defendant Hurtado said to Plaintiff Officers that it was not their place to be involved in collective bargaining negotiations or political campaigns. She and other individuals said they were going to "break the union," charge the Plaintiff Officers, and have them terminated. [*Id.*] They accused CPOA members of being corrupt and of stealing money.

Defendant Hurtado then "employed Bielma to attend a covert meeting at the residence of a criminal suspect that . . . the Plaintiff Officers . . . had arrested." [Compl. ¶ 19.] Defendant Hurtado solicited a complaint from the individual alleging that the Plaintiff Officers, specifically the CPOA president, Plaintiff Alarcon, engaged in excessive force. The City then hired an investigator to "dig[] up dirt" on the Plaintiff Officers. [*Id.*] The investigator's investigation was too wide-ranging, and the Plaintiff Officers were not adequately notified of its scope and nature.

Hurtado and the other candidate that the Plaintiff Officers had opposed were elected to City Council. "By the time the November 2014 election had come around," the City had hired Defendant Warne as an interim city manager to attack the CPOA and its leadership. [Compl. ¶ 23.] He was "hand selected by Hurtado." [*Id.*] Defendant Warne hired Defendant Bostic to be the interim chief of police. Bostic stated that he was brought in by Hurtado and Warne to clean up the police department.

At a November 19, 2014 press conference, Defendant Bostic stated that some council members, members of the CPOA, and members of the police department, have been running an "extortion racket." [Compl. ¶ 26.] He stated that some members of the prior investigation unit of the police department spent thousands of dollars on surveillance equipment. When questioned, the investigations unit reported to Bostic that they had no current investigations. He stated, "[w]e are cleaning this mess from former Chief and former staff." [Compl. ¶ 28.] Plaintiffs allege these statements are false.

Between December 2014 and July 2015, Plaintiffs Uriarte, Alarcon, Casillas, Garcia, Duran, Rodriguez, and Frazier ("Terminated Plaintiffs") were each fired for "innocuous, petty mistakes" that "do not justify termination."  [Compl. ¶ 35.]  The Complaint also states that the excessive force allegation served as the basis for the "alleged termination of various of the Plaintiff Officers."  [Compl. ¶ 19.]

In July 2015, Plaintiff Bielma "blew the whistle to the Department of Justice by making a written complaint of corruption by Bostic and Warne."  [Compl. ¶ 37.]  Plaintiff Bielma's letter describes how Defendants Bostic and Gerardo recommended that an officer named Acuna become the president of the CPOA.  They indicated that "it could benefit him" and that they would "take care of him."  [Compl. ¶¶ 38, 39.]

The letter also states that Defendants Bostic and Gerardo intimidated and coerced Acuna to lie regarding the excessive use of force charges against Plaintiff Alarcon.  "Bostic and Gerardo believed Acuna was not truthful during his investigation."  [Compl. ¶ 41.]  "As a result, Bostic and Gerardo believed they had to terminate Acuna."  [*Id.*]  Otherwise, the other Terminated Plaintiffs could show disparate treatment because they had been or were going to be terminated, and the excessive force allegations made against the Terminated Plaintiffs were similar to those made against Acuna.

Defendants Bostic and Gerardo conspired to fire Acuna, tell Acuna to request a Skelly hearing[4] before Defendant Bostic, and have Acuna lie during it.  Acuna was to say he was not truthful in his investigation because he was intimidated "by the prior police administration and the Plaintiff Officers."  [Compl. ¶ 41.]  He was also supposed to say that he saw Plaintiff Alarcon use excessive force.  Defendants Bostic and Gerardo told Acuna that doing so would save his job.  "This past week, the allegations in Bielma's

---

[4] The term "Skelly hearing" derives from *Skelly v. State Personnel Board*, 539 P.2d 774 (1975), which held that public employees have property interests in their continued employment for due process purposes.  *Cason v. San Diego Transit Corp.*, No. 10CV0098-IEG (MDD), 2011 WL 1596315, at *2 n.1 (S.D. Cal. Apr. 25, 2011).  "A Skelly hearing is a pre-disciplinary, administrative hearing, during which a public employee has an opportunity to present his version of relevant events."  *Id.*

complaint came to happen." [Compl. ¶ 45.] Acuna was served with termination papers and he requested a Skelly hearing.

The Terminated Plaintiffs have been fired. Plaintiff Navarro has been subjected to a retaliatory investigation. Defendants Gerardo and Bostic have harassed and intimidated Plaintiff Bielma by threatening to prosecute him. Defendants Gerardo and Bostic threatened Plaintiff Bielma in order to keep him from disclosing the information in the Department of Justice complaint.

Lastly, Plaintiff Officers allege they have all worked over forty hours per week and have not been compensated adequately. Plaintiff Officers allege "the CPOA agreed to a collective bargaining agreement in 2013 or 2014 that mandated pay raises." [Compl. ¶ 71.] Defendants Warne and Bostic "stated that they would not pay the officers at the appropriate rate and that they didn't care about the agreement." [*Id.*]

On July 20, 2015, Plaintiffs filed this action against Defendants. Plaintiffs organize their claims into five counts: (1) retaliation pursuant to 42 U.S.C. § 1983;[5] (2) "union busting and retaliation" pursuant to California Government Code §§ 3300 et seq., 3502, 3506, and California Labor Code § 1102.5; (3) defamation and false light; (4) Fair Labor Standards Act ("FLSA") violations pursuant to 29 U.S.C. §§ 207 et seq.; and (5) "witness tampering (conspiracy to intimidate officers)" pursuant to 42 U.S.C. 1985(1)–(3), California Penal Code §§ 136.1, 137–40, 18 U.S.C. §§ 201(c)(2), 1512.

## LEGAL STANDARD

### A.   Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Ripeness is an issue of a court's subject matter jurisdiction and is properly attacked under Rule 12(b)(1). *See Ray*

---

[5] Any further reference to "§ 1983" or "section 1983" refers to 42 U.S.C. § 1983.

1    *Charles Foundation v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015).  The ripeness

2    doctrine is meant to prevent premature adjudication of issues that do not rise to the level

3    of a case or controversy.  *See Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S.

4    568, 580 (1985).  Ripeness "is peculiarly a question of timing, designed to separate

5    matters that are premature for review because the injury is speculative and may never

6    occur from those cases that are appropriate for federal court action." *Wolfson v.*

7    *Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (internal quotations and citations

8    removed).  "Because ripeness is peculiarly a question of timing, we look at the facts as

9    they exist today in evaluating whether the controversy before us is sufficiently concrete."

10   *Assiniboine and Sioux Tribes v. Bd. of Oil and Gas*, 792 F.2d 782, 788 (9th Cir. 1986)

11   (internal quotations omitted).

12       Courts consider two factors in the ripeness analysis:  (1) whether delayed review of

13   the issue would cause hardship to the parties; and (2) whether the issues are fit for

14   judicial decision or would benefit from further factual development.  *Pac. Gas and Elec.*

15   *Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983).

16   **B.    Rule 12(b)(6)**

17       A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro*

18   *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain

19   statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P.

20   8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is

21   plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22   570 (2007).  The plausibility standard thus demands more than "a formulaic recitation of

23   the elements of a cause of action," or "naked assertions devoid of further factual

24   enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

25   Instead, the complaint "must contain allegations of underlying facts sufficient to give fair

26   notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652

27   F.3d 1202, 1216 (9th Cir. 2011).

28

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## C.   Motion to Strike

California's anti-SLAPP statute provides a mechanism for striking "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *See* Cal. Code. Civ. P. § 425.16. "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court."[6] *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d

---

[6] Recently, this has been called into question, though it remains law. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring) ("*Newsham* is wrong and should be reconsidered.").

1   963, 970–73 (9th Cir. 1999)).  However, California's anti-SLAPP statute does not apply

2   to federal law causes of action.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir.

3   2009).

4   "Resolution of an anti-SLAPP motion requires the court to engage in a two-step

5   process."  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003) (internal

6   citations and quotations omitted).  First, the defendant must make a "threshold showing

7   that the challenged cause of action is one arising from protected activity."  *Id.*   Second,

8   the plaintiff must demonstrate a probability of prevailing on the claim.  *Id.*

9   **D.      Requests for Judicial Notice**

10   Generally, a district court's review of a 12(b)(6) motion to dismiss is "limited to

11   the complaint."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled*

12   *on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir.

13   2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).

14   Consideration of extrinsic evidence ordinarily converts a 12(b)(6) motion to dismiss into

15   a summary judgment motion.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.

16   2001).  However, there are two exceptions to this rule.  *Id.*  "First, a court may consider

17   'material which is properly submitted as part of the complaint.'"  *Id.*  That includes

18   documents that are physically attached to the complaint, and those that are not, but whose

19   authenticity is not contested and where the plaintiff's complaint necessarily relies on

20   them.  *Id.* (citing *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir. 1998) (internal

21   quotations omitted)).  Second, a court may take judicial notice of matters of public

22   record.  *Id.* at 688–89 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th

23   Cir. 1986) (internal quotations omitted).

24   **D<span>ISCUSSION</span>**

25   **A.      Requests for Judicial Notice**

26   Defendants request judicial notice of several matters in support of their motions to

27   dismiss and motion to strike.  [Doc. No. 7-2.]  Plaintiffs request judicial notice of several

matters in support of their responses in opposition to Defendants' motions.  [Doc. No. 15-2.]  No parties object to any of the requests for judicial notice.

Defendants request judicial notice of the following:

    a.  A complaint filed in a federal case, 14cv2826-BEN (PCL)

    b.  An order in 14cv2826-BEN (PCL)

    c.  A complaint in a federal case, 15cv0440-JM (PCL)

    d.  An order in 15cv0440-JM (PCL)

    e.  Calexico Municipal Code Chapters 2.02, 2.04, 2.10, 2.20, and 2.56

    f.  Calexico Police Department Policy Manual Chapter 1, Organizational Chart, and Policies 200, 300, 340, 344, 346, 1020, 1038

    g.  A memorandum of understanding between the City of Calexico and the CPOA

    h.  City of Calexico Personnel Commission Rules and Regulations 10.05–10.10

    i.  Administrative appeals by German Duran, Gabriel Rodriguez, Rudy Alarcon, Stephen Frazier, Steven Garcia, Luis Casillas, and Frank Uriarte

    j.  The fact that the administrative appeals of German Duran, Gabriel Rodriguez, Rudy Alarcon, Stephen Frazier, Steven Garcia, Luis Casillas, and Frank Uriarte are still pending

    k.  A Government Claim for Damages submitted by German Duran, Gabriel Rodriguez, Rudy Alarcon, Stephen Frazier, Steven Garcia, Luis Casillas, Frank Uriarte, and Isaias Navarro against the City of Calexico, Betty Kelepecz, and Norm Traub & Associates

    l.  A Government Claim for Damages submitted by German Duran against the City of Calexico, John T. Quinn, Richard Warne, Michael Bostic, Maritza Hurtado, and John M. Moreno

m. A Government Claim for Damages submitted by Francisco Uriarte against the City of Calexico, John T. Quinn, Richard Warne, Michael Bostic, Maritza Hurtado, and John M. Moreno

n. A Government Claim for Damages submitted by Luis Casillas against the City of Calexico, John T. Quinn, Richard Warne, Michael Bostic, Maritza Hurtado, and John M. Moreno

o. A Government Claim for Damages submitted by the CPOA, Rudy Alarcon, Luis Casillas, Frank Uriarte, Steven Garcia, German Duran, Gabriel Rodriguez, and Isaias Navarro against the City of Calexico, Richard Warne, and Michael Bostic

p. Exhibits 2-6 to the Declaration of Gabriela Garcia (i.e., the claims referenced in requests k-o above) are the only claims submitted to the City of Calexico by any of the following individuals: Rudy Alarcon, Luis Casillas, Frank Uriarte, Steven Garcia, German Duran, Gabriel Rodriguez, Isaias Navarro, Joseph Bielma, and Stephen Frazier

Plaintiffs request judicial notice of the following:

a. Two orders in a federal case, 14cv2271-CAB (JMA)

b. A Government Claim for Damages filed by Joseph Bielma

c. A Government Claim for Damages filed by Steven Frazier and Steven Garcia

d. A Government Claim for Damages filed by Rudy Alarcon and Gabriel Rodriguez

e. Calexico City Website on City Council authority, at https://www.calexico.ca.gov/index.asp?SEC=77657325-690F-4D88-81D1- A62DF21529B9&Type=B_DIR

## 1. Discussion

Defendants' requests labeled a–f, h, k–o, and Plaintiffs' requests labeled a–d, are public records. No party questions the authenticity of these public records. While a court

may take judicial notice of undisputed matters of public record, it may not take judicial notice of a fact that is subject to reasonable dispute.  Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  For example, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Lee*, 250 F.3d at 690 (internal quotations omitted).  Accordingly, the Court takes judicial notice of the existence of the public records listed in Defendants' requests a–f, h, k–o and Plaintiffs' requests a–d, but does not take judicial notice of the disputed facts contained therein.  To that extent, Plaintiffs' and Defendants' requests for judicial notice are **GRANTED**.

Defendants request judicial notice of the memorandum of understanding ("MOU") between the City of Calexico and the CPOA.  This agreement is relevant to Plaintiffs' allegations that Defendants violated the FLSA by not honoring a collective bargaining agreement that the CPOA entered into.  Plaintiffs do not dispute the authenticity of the MOU or otherwise oppose Defendants' request for judicial notice of it.  Accordingly, Defendants' request is **GRANTED**.

Defendants seek judicial notice of the Terminated Plaintiffs' administrative appeals and the fact that the administrative appeals are currently being scheduled, as evidenced by emails to Defendant Bostic and an email chain attached to Stefanie K. Vaudreuil's declaration.  [Doc. No. 7-2, at 4:20–5:2; Doc. No. 7-9, Exh. 3.]  Defendants rely on these matters for the purpose of disputing subject matter jurisdiction pursuant to Rule 12(b)(1).  The Court need not take judicial notice of the matters, however, because the Court may look to extrinsic evidence in analyzing subject matter jurisdiction.  *See Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  Accordingly, the Court **DENIES** Defendants' requests as moot.

Defendants request judicial notice of the fact that the government claims for damages listed in requests labeled k-o are the only government claims filed with the City

1   of Calexico by any of the plaintiffs.  However, Plaintiffs request judicial notice of a

2   government claim filed by Plaintiff Bielma which is not included in Defendants' requests

3   for judicial notice.  Accordingly, the Court **DENIES** this particular request.

4        Plaintiffs seek judicial notice of the City of Calexico website regarding City

5   Council authority.  Publically accessible websites may be judicially noticed on a motion

6   to dismiss.  *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014).

7   No party contests the website's authenticity.  Further, the identity of the persons having

8   policy-making authority is relevant to Plaintiffs' claims.  Accordingly, the Court

9   **GRANTS** Plaintiffs' request.

10  **B.    Motion to Dismiss Pursuant to Rule 12(b)(1)**

11       Seven of the plaintiffs—Plaintiffs Uriarte, Alarcon, Casillas, Garcia, Duran,

12  Rodriguez, and Frazier—allege that their employment with the City of Calexico as police

13  officers has been terminated ("Terminated Plaintiffs").  Under Rule 12(b)(1), Defendants

14  move to dismiss the Terminated Plaintiffs' § 1983 retaliation allegations in Count One of

15  the complaint, arguing they are unripe.  Defendants also argue that Plaintiffs' claims

16  under Count Five, and any other claims that are also based on allegations of fabricated

17  evidence, should be dismissed as unripe.

18       **1.    Ripeness of Count One Claims**

19       Defendants argue that Count One is unripe because there are pending

20  administrative appeals regarding the Terminated Plaintiffs' terminations.  Additionally,

21  Defendants contend the claims should be dismissed because any state administrative

22  decision would only be subject to review via petition for writ of mandate in state court,

23  and the decision would have preclusive effect in federal court.

24       Defendants do not dispute that the Terminated Plaintiffs' employment was

25  terminated.  Rather, Defendants' ripeness argument rests solely on the fact that the

26  Terminated Plaintiffs have appealed their terminations.  Defendants rely on *Chandler v.*

27  *State Farm Mut. Auto. Ins. Co.*, 596 F. Supp. 2d 1314 (C.D. Cal. 2008), *aff'd*, 598 F.3d

28

1    1115 (9th Cir. 2010) and *Winter v. California Medical Review, Inc.*, 900 F.2d 1322 (9th

2    Cir. 1990).

3          In *Chandler*, the plaintiff recovered a portion of his rental car costs from his

4    insurer after his car was damaged in a collision caused by another driver.  596 F. Supp.

5    2d at 1316–17.  His insurer sought and obtained partial reimbursement from the third-

6    party driver's insurer in a subrogation action.  *Id.*  The plaintiff then sued his insurer for

7    the unreimbursed costs.  *Id.*  The court held that the plaintiff did not have standing to sue

8    his insurer.  *Id.* at 1322–23.  To have standing, the plaintiff was required to show that he

9    could not recover from the tortfeasor because the defendant insurer had recovered from

10   the tortfeasor.  *Id.*  The plaintiff could not do so because he never attempted to recover

11   from the tortfeasor.  *Id.*  The court also held that the plaintiff's claims were unripe.  *Id.* at

12   1323.  Because the plaintiff was required to have first sought recovery from the

13   tortfeasor, his claims against the insurer "involve[d] future events that [were] too

14   uncertain and speculative."  *Id.* at 1323.  The plaintiff could successfully recover from the

15   tortfeasor and obviate any need to recover from the insurer.  *Id.*

16         Here, if the Terminated Plaintiffs are successful in their appeals, the need for this

17   action would be arguably obviated.  However, Plaintiffs need not exhaust administrative

18   remedies prior to suing in federal court under § 1983.  *Patsy v. Bd. of Regents of State of*

19   *Fla.*, 457 U.S. 496, 512 (1982).  Whereas the plaintiff in *Chandler* was required to

20   attempt and fail to recover from the tortfeasor prior to suing the insurer, the Terminated

21   Plaintiffs were not required to appeal their terminations prior to filing this action.  Thus,

22   insofar as Defendants' argument rests on an exhaustion of administrative remedies

23   requirement, it fails.  The Court is unaware of any other applicable prerequisites to filing

24   suit that would make this case analogous to *Chandler*.

25         In *Winter*, a peer review organization made a preliminary determination that a

26   physician had violated statutory obligations.  900 F.2d at 1324.  The organization notified

27   the physician of the determination and that it might recommend sanctions to the

28   Department of Health and Human Services.  *Id.*  The organization also notified the

hospital, which employed the physician, of an independent investigation against it, and as a result, the hospital suspended the physician's staff privileges.  *Id.*  The physician sued the peer review organization alleging it lacked jurisdiction to investigate him.  *Id.*

The Ninth Circuit held the physician's claims were not ripe.  *Id.* at 1325.  The organization's finding was not final—it was preliminary.  *Id.*  The organization could decide not to recommend sanctions, and "where a series of contingent events must occur to produce an injury, a court may find the case inappropriate for judicial resolution."  *Id.*  Further, a mere investigation does not constitute final agency action.  Lastly, the physician failed to demonstrate that he would suffer hardship if the court declined review because he did not show his injury was caused by the defendant organization.  *Id.*  He alleged his suspension of staff privileges constituted an injury, but the hospital, not the organization, suspended his privileges after the organization notified the hospital of its independent investigation.  *Id.*  The causal link was too tenuous.  *Id.*

Here, Defendants do not argue that the Terminated Plaintiffs' employment was not terminated, nor do they claim that the termination decisions were preliminary.  While it is possible that the termination decisions could be reversed on appeal, it does not necessarily follow that they do not constitute final decisions for the purposes of determining ripeness.  This is not a case where "a series of contingent events must occur to produce [the] injury" because the Terminated Plaintiffs have already been injured by being fired.  Further, Defendants do not argue that they did not cause Plaintiffs' terminations.  This is unlike the situation in *Winter* where the defendant did not directly cause the plaintiff's injury.

Because *Chandler* and *Winter* are not analogous to this action, the Court turns to settled general principles of ripeness.  A purpose of the ripeness doctrine is to prevent courts from reviewing cases where the alleged injury may not occur.  *Wolfson*, 616 F.3d at 1057.  Courts consider whether issues are fit for judicial decision or would benefit from further factual development, and whether refraining from review would cause hardship to the parties.  Termination of employment constitutes an injury.  Accordingly,

1   the injuries have already occurred in this case, and claims arising out of the injuries are fit

2   for judicial decision unless there is some showing that further factual development at the

3   agency level would be beneficial.  Defendants do not contend that further factual

4   development is necessary here.  Also, the Terminated Plaintiffs will endure continuing

5   hardship if the Court declines review, as they seek reinstatement.

6         Defendants also argue that the Terminated Plaintiffs' adverse employment claims

7   should be dismissed because an agency's findings in an administrative proceeding would

8   only be subject to review on petition for writ of mandate in state court, and even if not

9   reviewed by the state court, would have preclusive effect in federal court.  However,

10   Defendants' arguments are premature.  According to a declaration Defendants attach to

11   their motion, the administrative proceedings have not yet occurred.  [Doc. No. 7-6, at

12   2:9–12.]  Only three of the seven Terminated Plaintiffs have scheduled their hearings.

13   Defendants do not argue that issue or claim preclusion bars the Terminated Plaintiffs'

14   claims currently, but rather that once the Terminated Plaintiffs' administrative hearings

15   have concluded, the claims will be barred.  The Court cannot determine the preclusive

16   effect of proceedings that have not yet occurred.

17         Accordingly, the Court **DENIES** Defendants' request to dismiss the Terminated

18   Plaintiffs' § 1983 claims under Rule 12(b)(1).

19         **2.**    **Ripeness of Count Five Claims**

20         Defendants argue that the Court should dismiss Plaintiffs' "witness tampering"

21   claims under Count Five pursuant to 12(b)(1) because they relate to future proceedings

22   and are therefore not ripe for the Court's review.  Plaintiffs counter that their Count Five

23   allegations do not relate to the pending administrative proceedings, and the pending

24   proceedings will not "rectify or impact the fact that the Defendants have conspired to

25   threaten officers to lie." [Doc. No. 13, at 10.]  Plaintiffs state that the testimony may not

26   even be admissible in the administrative proceedings.

27   *//*

28   *//*

1

2

      **a.**    **42 U.S.C. § 1985(3), California Penal Code §§ 136.1, 137–40, 18 U.S.C. § 201(c)(2), 18 U.S.C. § 1512**

3

4

5

6

7

8

9

10

11

12

13

14

    In their opposition, Plaintiffs state that they do not oppose the dismissal of their Count Five claims alleging violations of 42 U.S.C. § 1985(3), California Penal Code §§ 136.1, 137–40, and 18 U.S.C. § 201(c)(2).  [Doc. No. 13, at 21, n.7.]  The Court also deems dismissal of Plaintiffs' claim under 18 U.S.C. § 1512 unopposed, as § 1512 is a criminal statute like many of the above statutes, and Plaintiffs do not argue against its dismissal in either of their oppositions.  [*See* Doc. Nos. 13, 14.]  California Penal Code §§ 136.1, 137–40, and 18 U.S.C. §§ 201(c)(2), and 1512 do not provide civil remedies.  The Court **GRANTS** Defendants' request to dismiss Plaintiffs' claims pursuant to California Penal Code §§ 136.1, 137–40, and 18 U.S.C. §§ 201(c)(2), and 1512.  The claims are **DISMISSED WITH PREJUDICE**.  The Court **GRANTS** Defendants' motion to dismiss Plaintiffs' 42 U.S.C. section 1985(3) claim, and it is **DISMISSED WITHOUT PREJUDICE**.

15

      **b.**    **42 U.S.C. § 1985(1) and (2)[7]**

16

17

18

19

20

21

22

23

    Section 1985[8] prohibits several types of conspiracies.  42 U.S.C. § 1985; *see also Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  Section 1985(1) prohibits conspiracies to prevent federal officers from performing their official duties.  *Id.* at 724–25.  The first part of section 1985(2) prohibits conspiracies to interfere with federal judicial proceedings, while the second part prohibits conspiracies to interfere with state judicial proceedings.  A plaintiff alleging the existence of a conspiracy to interfere with state judicial proceedings must allege some racial or class-based discriminatory animus behind the conspiracy.  *Id.* at 726 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

24

25

    Defendants argue Plaintiffs' section 1985 claims are not ripe.  However, the Court cannot adequately reach the issue of ripeness because Plaintiffs' section 1985 allegations

26

27

28

---

[7] These constitute the last remaining claims in Count Five.

[8] Any further reference to "section 1985" or "§ 1985" refers to 42 U.S.C. § 1985.

do not satisfy Rule 8 standards.  Rule 8 governs general pleading standards and can serve as an independent basis for dismissal of claims.  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1981).  Rule 8(d) requires that plaintiffs file "simple, concise, and direct" pleadings.  *Id.*  Pleadings must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading lacking "simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180.

The Complaint states that the "plot to threaten an officer to lie" was for the purpose of "uphold[ing] the [Terminated Plaintiffs'] terminations."  [Compl. ¶ 1.]  Plaintiffs state that Defendants Bostic and Gerardo intimidated Acuna to lie and "[t]hat lie would be evidence in all proceedings, including administrative proceedings, federal proceedings involving Alarcon's whistleblower case, as well as made part of the file reviewed by federal authorities as they review civil rights violations."  [Compl. ¶ 40.]  The Complaint indicates that Defendants Bostic and Gerardo conspired to pressure Acuna to lie under oath at his Skelly hearing, "which would then require him to lie in administrative, civil and criminal proceedings."  [Compl. ¶ 41.]  The Complaint states that Acuna had only been served with termination papers and requested a Skelly hearing the week prior to the Complaint being filed.  [Compl. ¶ 45.]  The Court cannot reasonably infer from the Complaint that, in that short interim, the Skelly hearing, administrative, civil, and criminal proceedings Plaintiffs refer to were held and that Acuna lied at all of them due to pressure by Defendants.  To allege violations of both sections 1985(1) and (2) under Count Five, Plaintiffs merely state:

> In doing what it is alleged they have done, Defendants Bostic
> and Gerardo have conspired together to threaten persuade or
> coerce an officer to provide false testimony; that testimony
> would then be used against the Plaintiff Officers in various
> administrative and judicial proceedings, including but not
> limited to a federal lawsuit alleging retaliation, a federal lawsuit

1
2

alleging excessive force, a federal probe and civil rights
criminal prosecution.  This false testimony caused damages on
the part of the Plaintiff Officers.

3

4

[Compl. ¶ 81.]

5

As for section 1985(1), there is nothing in the Complaint that can be construed as

6

alleging a conspiracy to prevent federal officers from performing their official duties.

7

Plaintiffs do not claim to be federal officers nor do they name any federal officers.  *See*

8

*Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717–18 (9th Cir. 1981)

9

(stating section 1985(1) "applies exclusively to federal officers").  Thus, the Court cannot

10

discern any factual basis for a claim under section 1985(1).

11

Section 1985(2) provides causes of action for two types of conspiracies, but the

12

Complaint describes 1985(2) as only "prohibit[ing] conspiracies to interfere with judicial

13

proceedings in federal court."  [Compl. ¶ 80.]  Accordingly, the Court infers that

14

Plaintiffs only seek to assert a violation of the first part of section 1985(2), which relates

15

to federal judicial proceedings.  To state a claim under the first part, a plaintiff must plead

16

and show: "(1) a conspiracy between two or more persons, (2) to deter a witness by force,

17

intimidation, or threat from attending federal court or testifying freely in a matter there

18

pending, which (3) causes injury to the claimant."  *Rutledge v. Ariz. Bd. of Regents*, 859

19

F.2d 732, 735 (9th Cir. 1988).

20

It is unclear what proceedings Plaintiffs' claims relate to.  Plaintiffs do not satisfy

21

Rule 8 by mentioning and vaguely describing proceedings, such as "a federal probe" or

22

"federal proceedings involving Alarcon's whistleblower case."  [Compl. ¶ 40, 81.]  Based

23

on the Complaint, the Court cannot discern whether any federal proceedings have already

24

occurred, are currently pending, or are merely anticipated.  Thus, it is unclear whether a

25

witness has already been deterred from testifying freely in some proceedings.  This is of

26

concern because Plaintiffs must allege that they have already been injured by the

27

conspiracy.  The conspiracy does not itself constitute the injury.  Regarding any injury,

28

Plaintiffs merely state that the "false testimony caused damages on the part of the

1   Plaintiff Officers."  [Compl. ¶ 81.]  However, the Complaint does not indicate that any

2   false testimony has occurred in a federal proceeding yet, or if it has, where it occurred,

3   when it occurred, the contents of the testimony, and the nexus between it and Plaintiffs'

4   alleged damages.

5        Ripeness "is peculiarly a question of timing, designed to [screen] matters that are

6   premature for review because the injury is speculative and may never occur."  *Wolfson v.*

7   *Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (internal quotations and citations

8   removed).  Courts "look at the facts as they exist today."  *Assiniboine and Sioux Tribes v.*

9   *Bd. of Oil and Gas*, 792 F.2d 782, 788 (9th Cir. 1986) (quotations omitted).  The Court

10  cannot discern from the Complaint a timeline or the facts as they exist today.  As a result,

11  the Court cannot analyze whether Plaintiffs' claims are ripe.

12       Further, the Court's ability to determine ripeness is not its only concern regarding

13  the section 1985 allegations.  A complaint must give "fair notice and [] enable the

14  opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

15  2011).  The Complaint does not put Defendants on notice of the grounds for Plaintiffs'

16  section 1985 claims, as required by Rule 8.  As discussed, there is no basis for a claim

17  under section 1985(1), as Plaintiffs are not federal employees.  Regarding the first part of

18  1985(2), based on Defendants' motions to dismiss, Defendants have not been put on

19  notice that any federal proceedings have occurred, as Defendants assert they understood

20  Count Five as relating entirely to future proceedings.  As for the second part of 1985(2),

21  the Complaint indicates that a witness may lie (or may have lied) in various

22  administrative proceedings and a Skelly hearing, which would not be federal

23  proceedings.  Thus, insofar as Plaintiffs wish to assert a claim under part two of section

24  1985(2), pertaining to state judicial proceedings, they have not sufficiently put

25  Defendants on notice of such a claim and its basis.  Finally, Plaintiffs state that Count

26  Five is "brought by all Plaintiffs against all Defendants."  [Compl. ¶ 79.]  Yet, Count

27  Five only mentions Defendants Bostic and Gerardo.  Plaintiffs do not explain how any of

28  the other defendants are liable.

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiffs' section 1985 claims.  The Court **DISMISSES** Plaintiff's section 1985(1) claim **WITH PREJUDICE** and Plaintiff's section 1985(2) claim **WITHOUT PREJUDICE**.

## C.   Motion to Dismiss Pursuant to Rules 8, 9(b), and 12(b)(6)

Defendants move to dismiss every Count pursuant to Rule 8 or Rule 12(b)(6). [Doc. No. 7-1, at 4:19–21.]  Defendants allege Rule 9(b) standards apply to any of Plaintiffs' claims that allege solicitation of perjury or evidence falsification, and that such claims fail under that standard.[9]

### 1.   Count One

All Plaintiffs allege all Defendants retaliated against them based on their protected speech in violation of 42 U.S.C. § 1983.[10]  Defendants argue that Plaintiffs' allegations are insufficient to state a claim for relief for a multitude of reasons.

#### a.   42 U.S.C. § 1983

To state a claim for First Amendment retaliation under section 1983, a public employee must show all of the following: (1) he or she spoke on a matter of public concern; (2) as a private citizen; (3) his or her speech was a substantial or motivating factor in an adverse employment action taken against them; (4) the state did not have adequate justification for treating the employee differently from other members of the public; and (5) the state would not have taken the adverse employment action absent the protected speech.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1067, 1067 n.4 (2013) (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).  Whether the speech regards a matter of public concern depends on its "content, form, and context."  *Connick v. Myers*, 461 U.S. 138, 159 (1983).  "It is beyond dispute that how and where a public employee expresses his views are relevant."  *Id.*

---

[9] Because the Court finds Plaintiffs do not plead these claims sufficiently under Rule 8, the Court does not reach the issue of whether Rule 9(b) applies.

[10] Any further reference to "section 1983" or "§ 1983" refers to 42 U.S.C. § 1983.

1       A private citizen must show that "by his actions the defendant deterred or chilled

2 the plaintiff's political speech and such deterrence was a substantial or motivating factor

3 in the defendant's conduct." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283,

4 1300 (9th Cir. 1999) (internal quotations and citations omitted).

5       To state a claim for First Amendment retaliation against a municipality, a plaintiff

6 must plead one of the following theories: "(1) the constitutional violation was the result

7 of a governmental policy or a longstanding practice or custom; (2) the individual who

8 committed the constitutional violation was an official with final policy-making authority;

9 or (3) an official with final policy-making authority ratified the unconstitutional act."

10 *Heath v. City of Desert Hot Springs*, 618 F. App'x 882, 885 (9th Cir. 2015) (citing

11 *Monell v. Department of Social Services*, 436 U.S. 658 (1978)).  Regarding the second

12 theory, "[t]he fact that a particular official—even a policymaking official—has discretion

13 in the exercise of particular functions does not, without more, give rise to municipal

14 liability based on an exercise of that discretion."  *Pembaur v. City of Cincinnati*, 475 U.S.

15 469, 481–83 (1986).  "The official must also be responsible for establishing final

16 government policy respecting such activity."  *Id.*

17          **b.**    **Discussion**

18       Plaintiffs allege all of the individual defendants and the municipal defendant,

19 Defendant City, are liable under Count One.  Because the legal standard varies depending

20 on whether a defendant is an individual or a municipality, the Court discusses the

21 allegations as they relate to the individuals and the municipality separately.

22          **i.**    **Defendants Warne, Bostic, Gerardo, and Hurtado**

23       Under both the standard for public employees and the standard for private citizens,

24 a plaintiff must allege that a defendant took retaliatory actions at least in part based on the

25 plaintiff's protected speech.  Thus, all Plaintiffs must allege that each and every one

26 engaged in protected speech, and link that speech to Defendants' actions.

27       First, Plaintiffs fail to clearly delineate what speech they allege is protected or give

28 sufficient detail about any such speech.  Under Count Two, Plaintiffs state they

"exercise[ed] their constitutional rights to free speech and participat[ed] in labor, organizational, social and political activities as members and board members of the CPOA." [Compl. ¶ 40.] Elsewhere, Plaintiffs describe how Plaintiff Officers and the CPOA had "participated in local elections, endorsing candidates and opposing others . . . routinely [spoke] out at City Council meetings . . . [met] with City Officials to discuss problems within the Police Department, the City, and how to better improve the law enforcement service provided to the citizens." [Compl. ¶ 9.] Plaintiff Officers organized a vote of no confidence against a lieutenant for the Police Department. The CPOA and Plaintiff Officers worked with the City when disputes arose. Plaintiff Officers "negotiate[ed] concessions on the part of the rank and file officers such that the City could carry on and maintain viability." [Compl. ¶ 12.] Apparently, all of the above activities were successful and Plaintiff Officers' "individual and collective voice was heard." [Compl. ¶ 9.] Plaintiffs summarize:

> In short, the Plaintiff Officers have been active in bringing to light actual corruption, mismanagement and disruption within the Department and the City, filing grievances and submitting complaints outlining issues of public concern, challenging unlawful discipline and exercising their rights to appeal discipline and becoming involved in political process by advocating for proper leadership and management from the top to the bottom.

[Compl. ¶ 13.]

In November 2014, Plaintiffs allege that Plaintiff Officers "actively opposed the re-election of one City Council member, Hurtado, and opposed the election of another." [Compl. ¶ 16.] "[T]he myriad of activities were all protected under state and federal law, including the First Amendment." [Compl. ¶ 17.] "Around this same time, Hurtado . . . began to engage in retaliatory actions." [Compl. ¶ 18.]

It is unclear from the Complaint which of the many activities listed are alleged to constitute the protected speech that is the basis for Defendants' purported retaliation.

1   Under Count Two, Plaintiffs point to "labor, organizational, social and political

2   activities" as the grounds for the retaliation, but Plaintiffs do not delineate any specific

3   statements or activities attributable to any particular plaintiff.  Given that there are nine

4   plaintiffs, this is problematic.  Generalized and conclusory allegations that Plaintiff

5   Officers engaged in myriad protected activities are insufficient to allege that each

6   plaintiff has engaged in protected speech that could serve as the basis for a First

7   Amendment retaliation claim.  Plaintiffs must not only point to some particular speech

8   and a specific speaker, but must also state some facts regarding the speech's content,

9   form, and context.  *See Connick v. Myers*, 461 U.S. 138, 159 (1983).  Moreover, Plaintiff

10  Bielma is not included in the Complaint's definition of "Plaintiff Officers" nor described

11  as a member of the CPOA, yet all allegations of potentially protected activity relate only

12  to Plaintiff Officers or members of the CPOA.  Insofar as Plaintiffs wish to sue on

13  Plaintiff Bielma's behalf, Plaintiffs must allege he engaged in some protected speech.[11]

14      Second, even were the Court to assume that Plaintiffs adequately allege they

15  engaged in protected speech, Plaintiffs have not given a clear timeline or stated sufficient

16  facts to show that their allegedly protected speech was a substantial or motivating factor

17  in the actions taken against them.  Plaintiffs must show both that Defendants were

18  responsible for the adverse actions and that they were motivated, at least in substantial

19  part, by Plaintiffs' protected speech.

20      The Complaint does not allege Defendants were responsible for the adverse actions

21  taken against any of the plaintiffs, except for Plaintiff Bielma.  The Complaint is silent as

22  to exactly which defendant(s) decided to terminate the Terminated Plaintiffs'

23  employment; it just states that they "have been unjustly terminated."  [Compl. ¶ 47.]  The

24  Complaint states "[Plaintiff] Navarro has been subjected to a retaliatory investigation,"

25

26

27

28
[11] As Defendants point out, Plaintiff Bielma's letter to the Department of Justice is attached to the
Complaint, but the allegations do not indicate that Defendants' retaliated in reliance on the letter.

but does not state who was responsible for this particular investigation.[12]  The Complaint is more specific as to Plaintiff Bielma, stating that Defendants Gerardo and Bostic threatened to prosecute Plaintiff Bielma.  [*Id*.]

Moreover, Plaintiffs have not stated sufficient facts to show that Defendants were motivated by any of Plaintiffs' allegedly protected activities.  The Complaint states generally that Hurtado retaliated "around [the] same time" as Plaintiff Officers opposed her reelection and another's election.  [Compl. ¶ 18.]  But, Plaintiffs do not allege Defendant Hurtado knew of Plaintiff Officers' opposition.  To sufficiently allege causation, Plaintiffs must at least state that the protected activity occurred prior to Defendant Hurtado's allegedly retaliatory conduct and that Defendant Hurtado knew of it, otherwise it cannot have been a motivating factor.

Further, Plaintiffs indicate that Defendant Hurtado believed CPOA members were corrupt and stealing money, and she wanted to make sure Plaintiff Officers were terminated and charged.  [Compl. ¶ 18.]  In light of this and the foregoing deficiencies regarding the timeline, Plaintiffs' allegation that the listed protected activities were the basis for any of Defendant Hurtado's actions does not rise above speculation.

As for the other Defendants, Plaintiffs have not alleged a sufficient nexus between their activities and Plaintiffs' protected activities.  Defendant Hurtado "hand selected" Defendant Warne "for the express purpose of attacking the CPOA and its leadership, the Plaintiff Officers."  [Compl. ¶ 23.]  However, again, Plaintiffs do not sufficiently allege that the reason for attacking the CPOA or its leadership was due to Plaintiffs' protected speech activities.  Even if that was Defendant Hurtado's motive, there are no facts to indicate that was also Defendant Warne's motive.  As for Defendant Gerardo, Plaintiffs explicitly state that the motive behind his actions was "power and control."  [Compl. ¶ 1.]  As for Defendant Bostic, Plaintiffs state his motive was money and that he been offered

---

[12] The Complaint states "The City . . . hired an investigator to conduct a fishing expedition into the entirety of the Police Department . . ." but it is unclear whether this is the same investigation that Plaintiffs allege was instituted in retaliation against Plaintiff Navarro.  [Compl. ¶ 20.]

too high of a salary.  Based on the Complaint, Defendant Bostic was not hired until after all of the alleged protected activities occurred.  These allegations undermine Plaintiffs' conclusion that Defendants all acted in response to any particular speech by Plaintiffs.

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Count One claims as to the individual defendants is **GRANTED** and the claims are **DISMISSED WITHOUT PREJUDICE**.

### ii.   Defendant City of Calexico

Plaintiffs do not sufficiently plead any of the requisite theories of municipal liability.  First, Plaintiffs do not sufficiently plead that their adverse employment actions were the result of a governmental policy or longstanding practice.  Plaintiffs allege, in conclusory fashion, "Defendants . . . had been deeply set on a course of action and pattern and practice of retaliating, harassing, intimidating, and discriminating against the peace officer union, its leadership and its outspoken members."  [Compl. ¶ 22.]  Plaintiffs plead no facts in support.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (stating the court need not take legal conclusions as true even if cast as factual allegations).  In fact, Plaintiffs undermine their allegation by stating that they engaged in a variety of allegedly protected activities and were very successful in having their voices heard prior to November 2014.  Plaintiffs do not allege a single instance of retaliation aside from the actions that are the subject of this litigation or point to any governmental policies.  Accordingly, Plaintiffs do not sufficiently allege a governmental policy or longstanding practice of retaliating against protected speech activities.

Second, Plaintiffs do not sufficiently allege that those responsible for the constitutional violation were officials with final policy-making authority.  First, it is unclear from the Complaint which of the defendants are alleged to be responsible for each of the plaintiff's purported constitutional violations.  Second, the only allegation regarding the individual defendants' final policy-making authority is the following:

> Based on information and belief, the acts and omissions
> of Defendants, and each of them, were done by
> Defendants under color of state law and as final policy
> making authorities to which Defendant City delegated its
> governing powers in the subject matter areas in which
> these policies were promulgated or decisions taken or
> customs and practices followed. The acts and omissions
> described above were taken by the City's official policy
> makers as members charged with such responsibility.

[Compl. ¶ 53.]  Again, the allegation is too conclusory.  The Rule 12(b)(6) plausibility standard requires more than "a formulaic recitation of the elements of a cause of action . . . devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Yadin Company, Inc. v. City of Peoria*, 2008 WL 906730, at *4–6 (D. Ariz. March 25, 2008) (finding similar allegations of municipal liability to be "too bare-boned and conclusory" to satisfy *Twombly*).

Moreover, Plaintiffs directly contradict their allegations in their opposition.  In response to Defendants' argument that Defendant Bostic enjoys immunity from liability for his allegedly defamatory statements, Plaintiffs state that only City Council makes policy.  [Doc. No. 13, at p. 20:9–20.]  Plaintiffs state, "[i]t is unfathomable to believe that the City would ever bypass its city manager and delegate policy making authority to a contract employee."  [*Id.*]  "In any event, the City's website establishes that only the City Council is vested with such policy-making authority."  [*Id.*]  Further, Defendant Hurtado, the only defendant alleged to be a City Council member, is alleged to have acted outside of her role as City Council member, contradicting any allegation that she acted pursuant to final policy-making authority.

Lastly, Plaintiffs do not sufficiently plead that any officials with final policy-making authority ratified the constitutional violations.  Plaintiffs state, "[t]he City adopted and ratified each of their decisions as alleged herein as its own policies, customs, practices or decisions, as if the same had been promulgated directly by City."  [Compl. ¶ 5.]  Again, conclusions of law without further factual enhancement are insufficient.

In light of the foregoing, Plaintiffs do not sufficiently plead any of the theories required to allege municipal liability under Count One.  Defendants' motion to dismiss Plaintiffs' Count One claim as to Defendant City is **GRANTED** and the claim is **DISMISSED WITHOUT PREJUDICE**.

### 2.     Count Two

Under Count Two, all Plaintiffs allege violations of Government Code §§ 3300 et seq., 3502, 3506, and Labor Code § 1102.5 against all Defendants.  Defendants move to dismiss all claims under Rule 12(b)(6).

### a.     Plaintiff Bielma

As an initial matter, all of the causes of action alleged under Count Two only apply to employees or members of employee organizations.  Plaintiff Bielma is not alleged to have been an employee of any of the defendants or a member of the CPOA during the events described in the Complaint.[13]

As such, Defendants' motion to dismiss Count Two as to Plaintiff Bielma is **GRANTED** and the claim is **DISMISSED WITHOUT PREJUDICE**.

### b.     Government Code §§ 3300 et seq.

Government Code chapter 3300 is known as the Public Safety Officers Procedural Bill of Rights Act.  *See* Cal. Gov. Code § 3300.  Plaintiffs allege, "Government Code sections 3300 et seq. prohibits an employer from subjecting an officer to punitive action, threatening with punitive action, or denying a promotion for the lawful exercise of his rights under the Act."  [Compl. ¶ 59.]  "Defendants [sic] actions as alleged herein are violations of these statutory protections."  [Compl. ¶ 60.]  Plaintiffs do not describe what rights under the Act they lawfully exercised.  Plaintiffs do not cite to any specific provisions of chapter 3300, but rather cite the entire chapter.  Further, the Complaint

---

[13] In Plaintiffs' opposition, Plaintiffs state they do not bring a Government Code chapter 3300 claim on behalf of Plaintiff Bielma.  However, the Complaint states Count Two, which includes the chapter 3300 claim, is brought by all Plaintiffs against all Defendants.  The Complaint, and not the opposition brief, is the operative pleading.

1   states Count Two is brought by all Plaintiffs against all Defendants, but in Plaintiffs'

2   opposition, Plaintiffs state they do not assert a violation of chapter 3300 against the

3   individual defendants. [Doc. No. 14, at p. 4:20–22.] The Complaint is insufficient under

4   Rule 8, as it does not adequately give Defendants notice of the claims Plaintiffs wish to

5   assert, their grounds, or who must defend against them.

6        Accordingly, Defendants' motion to dismiss Plaintiffs' claims under chapter 3300

7   is **GRANTED** and the claims are **DISMISSED WITHOUT PREJUDICE**.

8               **c.     Government Code §§ 3502 and 3506**

9        California Government Code sections 3502 and 3506 are part of the Meyers-

10  Milias-Brown Act ("MMBA"). *See* Cal. Gov. Code §§ 3500 et seq. Section 3502 states,

11  "public employees shall have the right to form, join, and participate in the activities of

12  employee organizations of their own choosing for the purpose of representation on all

13  matters of employer-employee relations." They also have the right to refuse to join or

14  participate in such organizations. Cal. Gov. Code § 3502. Government Code section

15  3506 states, "public agencies and employee organizations shall not interfere with,

16  intimidate, restrain, coerce or discriminate against public employees because of their

17  rights under Section 3502." "Before July 1, 2001, an employee association claiming a

18  violation of the MMBA could bring an action in superior court." *Coachella Valley*

19  *Mosquito & Vector Control Dist. v. California Pub. Employment Relations Bd.*, 112 P.3d

20  623, 625 (2005). In 2001, the MMBA was amended. *Id.* The amendments gave the

21  California Public Employment Relations Board ("PERB") exclusive jurisdiction over

22  violations of the MMBA. Cal. Gov. Code § 3509; *see also id*. However, PERB does not

23  have jurisdiction over peace officers.[14] Cal. Gov. Code § 3511; *see also Coachella*

24  *Valley*, 112 P.3d at 625, n.1 (2005).

25  _____

26  [14] Recently, PERB has asserted that it has jurisdiction over suits by employee organizations that consist
    of both peace officers as defined in Government Code section 3511 as being outside PERB's

27  jurisdiction, and other types of officers that are clearly within PERB's jurisdiction. PERB Decision No.
    2431-M (June 10, 2015). However, Plaintiffs are not suing on behalf of an employee organization, such

28  as the CPOA.

1    Defendants move to dismiss these claims.  First, Defendants argue that Plaintiffs

2 do not sufficiently plead that Defendants violated Plaintiffs' rights under these sections

3 due to any of the plaintiff's activities as CPOA members.  Second, Defendants argue that

4 there is no private right of action under sections 3502 or 3506, and that Plaintiffs' only

5 remedy is to file a petition for writ of mandate in California Superior Court.  Plaintiffs

6 oppose, contending that they sufficiently plead their claim, the MMBA gives a private

7 right of action, and no case law supports the proposition that a writ of mandate is the only

8 means of enforcing a right under the MMBA.

9    As an initial matter, section 3506 only prohibits public agencies and employee

10 organizations from committing the acts described.  Section 3501 defines "public agency"

11 and includes cities, but not individuals, such as individual police officers.  Gov. Code §

12 3501.  Plaintiffs bring this cause of action against all Defendants, but only Defendant

13 City falls within its purview.  *See San Diego Police Officers' Ass'n v. Aguirre*, No. 05–

14 CV–1581-H (POR), 2005 WL 3180000, at *14 (S.D. Cal. Nov. 5, 2005) (dismissing

15 MMBA claim as to individual because the parties did not address why an individual

16 would be liable).  Accordingly, Defendants' motion to dismiss this claim as to

17 Defendants Bostic, Gerardo, Warne, and Hurtado is **GRANTED** and the claim is

18 **DISMISSED WITH PREJUDICE**.

19    As for Defendant City, the Court agrees with Defendants that Plaintiffs do not

20 sufficiently plead causes of action under sections 3506 and 3502.  To state a cause of

21 action, Plaintiffs must allege that Defendant City interfered with or discriminated against

22 Plaintiffs because of Plaintiffs' rights under section 3502.  Plaintiffs do not allege a

23 sufficient nexus between any rights listed under section 3502 and any actions taken by

24 Defendant City.

25    The Court finds Defendants' other two arguments unavailing.  Defendants argue

26 there is no private right of action under the MMBA.  The Court finds no authority for

27 such a position.  Defendant cites to *Aaron v. Aguirre*, but it is inapposite.  *Aaron v.*

28 *Aguirre*, No. 06-CV-1451-H (POR), 2007 WL 959083, at *7 (S.D. Cal. Mar. 8, 2007).  In

that case, the plaintiffs did not claim a violation of section 3502, but rather a "violation of the public policy embodied in the [MMBA]."  The court held that the plaintiffs did not satisfy their burden of showing the statute gave them a private right of action of that nature.  Here, Plaintiffs' claim Defendants violated the statute, not the public policy embodied by the MMBA.  The Court finds no persuasive or binding authority indicating section 3502 does not create a private right of action.

Lastly, Defendants argue that even if there is a private right of action under the MMBA, Plaintiffs' only remedy is to pursue a writ of mandate.  However, Defendants do not provide the Court with, and the Court is not aware of, any authority in support.  PERB does not have jurisdiction over peace officers such as Plaintiff Officers.  Accordingly, peace officers need not—and cannot—obtain a final decision from PERB.  Without a final decision from PERB, there is nothing for the peace officers to seek review of via writ petition.  Thus, Defendants do not satisfy their burden of showing they are entitled to dismissal on the grounds that there exists no private right of action, or that Plaintiffs may only seek a writ of mandate.

In any event, Plaintiffs do not sufficiently allege a violation of the MMBA.  Accordingly, Defendants' motion to dismiss the MMBA claims is **GRANTED** and these claims are **DISMISSED WITHOUT PREJUDICE**.

### d.     Labor Code § 1102.5

The Complaint states, "Labor Code section 1102.5 prohibits an employer, among other things, from retaliating against an employee for disclosing a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  The Court cannot discern what facts in the Complaint support this claim.  Plaintiffs do not allege that each of them disclosed any violations of state or federal laws or regulations.

The only allegation that could constitute such a disclosure would be the allegation that Plaintiff Bielma sent a letter to the Department of Justice.  However, the Complaint does not allege that Defendants took any actions in retaliation for Plaintiff Bielma's

letter.  In fact, Plaintiffs state that Defendants Gerardo and Bostic threatened to prosecute Plaintiff Bielma in order to "keep [Plaintiff] Bielma quiet and keep him from disclosing the aforementioned information," i.e., the information in the letter.  [Compl. ¶ 47.]  Thus, the retaliatory conduct allegedly taken against Plaintiff Bielma—threats of prosecution— did not occur in response to the letter.  Plaintiffs do not allege Defendants ever knew of the letter.  Further, as mentioned, Plaintiff Bielma cannot sue under Labor Code section 1102.5 because Plaintiff Bielma was allegedly not employed by any of the Defendants during the events described in the Complaint.

Moreover, Plaintiffs state in their opposition that Plaintiffs only bring this cause of action against the City.  [Doc. No. 14, at p. 4:22–23.]  The Complaint states Count Two is alleged by all Plaintiffs against all Defendants.

As such, Plaintiffs have not put Defendants on notice of the basis for this claim, or who the claim is brought by and against.  Defendants' motion to dismiss Plaintiffs' claim under Labor Code section 1102.5 is **GRANTED** and the claim is **DISMISSED WITHOUT PREJUDICE**.

### 3. Count Three

Plaintiff Officers (i.e., all Plaintiffs, except Plaintiff Bielma) assert causes of action for libel, pursuant to California Civil Code section 45, and slander, pursuant to California Civil Code section 46, and false light.  Plaintiff Officers bring these claims against Defendant Bostic.

#### a. Defamation and False Light

Defamation and false light are governed in part by state law, and in part by constitutional considerations.  Section 45 of the California Civil Code defines libel as, "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  Section 46 defines slander as:

1
2
3
4
5
6
7
8
9
10

> [A] false and unprivileged publication, orally uttered, and also
> communications by radio or any mechanical or other means
> which:
> 1. Charges any person with crime, or with having been indicted,
> convicted, or punished for crime;
> [. . .]
> 2. Tends directly to injure him in respect to his office,
> profession, trade or business, either by imputing to him general
> disqualification in those respects which the office or other
> occupation peculiarly requires, or by imputing something with
> reference to his office, profession, trade, or business that has a
> natural tendency to lessen its profits;
> [. . .]
> 5. Which, by natural consequence, causes actual damage.

11  Cal. Civ. Code § 46.

12          To constitute "publication," the written or spoken statement must have been made

13  to a person or persons other than the plaintiff.  *See Hoesl v. U.S.*, 451 F. Supp. 1170, 1172

14  (1978).  The statement must specifically refer to, or be of and concerning, the plaintiff.

15  *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986); *Rosenblatt v. Baer*, 383

16  U.S. 75, 83 (1966) (stating that, under the Constitution, a plaintiff must show "specific

17  reference").  Under California law, a plaintiff must prove the defendant acted with at least

18  negligence in order to recover actual damages.  *Khawar v. Globe Intern., Inc.*, 965 P.2d

19  696, 708 (Cal. 1998); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–48 (1974)

20  (stating that states determine the requisite fault where a plaintiff is a private figure).  If

21  the plaintiff is a public official or public figure, the Constitution requires the plaintiff to

22  prove the defendant acted with actual malice—either with knowledge of the statement's

23  falsity or with reckless disregard for its truth—to recover actual damages.  *See Gertz*, 418

24  U.S. at 342–43; *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

25          False light invasion of privacy requires a public disclosure, which places plaintiff

26  in a false light in a manner highly offensive to a reasonable person.  *Fellows v. National*

27  *Enquirer*, 721 P.2d 97, 99–100 (Cal. 1986).  "When a false light claim is coupled with a

28  defamation claim, the false light claim is essentially superfluous, and stands or falls on

whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers*, 8 Cal. Rptr. 2d 802, 823, n.13 (Cal. Ct. App. 1999) (internal citations omitted); *see also Time, Inc. v. Hill*, 385 U.S. 374 (1967). *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1213 (S.D. Cal. 2010) ("[I]n California, false light invasion of privacy is equivalent to libel.").

### b.   Plaintiffs' Allegations

Plaintiff Officers state, "Bostic and Warne began to make patently false, defamatory and outrageous public statements against the Plaintiff Officers and the CPOA . . . [b]oth have portrayed the CPOA in a false and misleading light." [Compl. ¶ 26.]  The following are excerpts from the Complaint, wherein Plaintiff Officers describe and quote statements made by Defendant Bostic at a press conference in November 2014 in support of their defamation and false light claims:

1. "What happened it's the former Chief and Investigations unit were so busy trying to save their jobs and their careers rather than focusing in the investigation."  "Now my current investigation unit is taking heat from victim, council members, they are undermining a criminal investigation along with a County Supervisor. I am not going to mention any names, but I'm here to tell a story about how the council members in conjunction with the Calexico Police Officer's Association and members of the association have used city funds and city resources to run what I called and [sic] extortion racket."  "How do I know that? I know that from facts, and I'm not doing this from the thousands and thousands of you who stopped me every day to tell me their stories of what's happening to you by few members of my department."  [Compl. ¶ 26.]

2. "Right after [the former chief] was relieved and I was appointed Chief, members of the former investigation unit of the Calexico Police Department went out and bought thousands and thousands of dollars of very expensive surveillance equipment and cameras with tax payer's money."  "When I questioned the investigations unit, I asked them how many criminal investigations they had. The answer was zero."  "So if you were victims of crime; they were not investigating that" he then asked "How many narcotics investigations were you working on and he said none" "So we have two gooses, two zeros."  [Compl. ¶ 28.]

3.   Bostic further stated that nothing had been done on the kidnapping case by saying "When this crime occurred, the police department didn't do a darn thing. We can't find any reports, any investigations and all happened from the time before I got here in November." "We are cleaning this mess from former Chief and former staff, that political corruption as its best." [Compl. ¶ 28.]

4.   Bostic continued "This is how the scandal works between the CPOA and Council Members. They are using all this equipment to go around tracking, voice recording, taking pictures, trying to get them in compromising positions; Like the Mafioso of New York. That's how they are operating." "They are taking all this pictures, video evidence, what do you think they are doing with that? So, you wonder why cities time to time act in a strange way. They are being extorted." "They are being extorted information and pictures. Unfortunate some of the officers were up to that and we have the evidence in the hands of the FBI." "These few thugs who think they can be criminals wearing a badge." [Compl. ¶ 29.]

5.   "I received a phone call from Richard Warne (Calexico City Manager) and he offered me the job." "Warne asked me to come clean the department and that I was going to receive full support." "I had a plan I had implemented in the past." "It'll take a few months to turn the place around." "He (Warne) told me there were no rules and everyone does whatever they please." [Compl. ¶ 31.]

Plaintiff Officers also state, "[t]here are numerous other defamatory statements that Bostic and Warne have made publicly at their press conferences, or in press releases," and "[t]he statements contained herein are only a small sampling." [Compl. ¶ 33.] Further, Plaintiff Officers allege that John T. Quinn ("Quinn"), the City Finance Director, wrote a memorandum about Plaintiff Officers and the CPOA, stating they were corrupt. [Compl. ¶ 34.] Plaintiff Officers allege the memorandum was defamatory and portrayed them in a false light. [*Id.*]

### c.   Discussion

As an initial matter, Plaintiff Officers do not sufficiently plead a cause of action for defamation or false light based on any statements not quoted or described in the Complaint, or based on any statements made by Defendant Warne or Quinn. The Complaint does not give Defendants notice as required by Rule 8 where it merely states

that Defendants Bostic and Warne made other defamatory statements about Plaintiff Officers aside from those described.  Further, insofar as Plaintiff Officers wish to bring this Count against Defendant Warne or Quinn, the Complaint does not suffice to do so.  The Complaint states that this claim is only brought against Defendant Bostic.  Further, Quinn is not named as a defendant.  Accordingly, insofar as Plaintiff Officers base their claims on any statements not described or quoted within, or against Defendant Warne or nonparty Quinn, Defendants' motion to dismiss is **GRANTED** and these claims are **DISMISSED WITHOUT PREJUDICE**.

The Court turns to the allegations describing Defendant Bostic's statements at a November 2014 press conference.  These allegations also fail to state a claim for defamation or false light.  As Defendants correctly point out, where an allegedly defamatory statement does not expressly refer to a plaintiff, a plaintiff must show that the statement refers to them by clear implication.  *SDVI/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 959–60 (9th Cir. 2008).  This is a constitutional requirement.  *See New York Times Co.*, 376 U.S. at 273–76, 290–92; *Rosenblatt*, 383 U.S. at 80–81.  California imposes another requirement—that a third party have understood the statement as referring to the plaintiff.  *SDVI/ACCI, Inc.*, 522 F.3d at 959–60.  Further, whether a statement could reasonably be interpreted by a fact finder as implicating a plaintiff is a question of law for the court.  *Id.* at 959.

Here, none of the statements listed refer to Plaintiff Officers explicitly or by clear implication.  The following are the only subjects referred to in a potentially defamatory manner in the excerpts listed above: the former Chief, the former investigations unit, members of the former investigations unit, "council members," the police department, "few members of my department," the CPOA, members of the "association" (presumably, the CPOA), "former staff," "some of the officers," "[t]hese few thugs," and "everyone."

None of the subjects, except for the former Chief, are specific individuals. Plaintiff Officers do not contend that any of them was the former Chief.  Accordingly, the

1   group libel rule governs.  The group libel rule provides that individual members of a

2   group may not sue regarding allegedly defamatory statements about the group.  However,

3   there are exceptions where the group is small and its members are easily ascertainable, or

4   the circumstances make it reasonable to conclude that the statement refers to the

5   individual.  *See Yow v. National Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1188 (E.D. Cal.

6   2008) (citing *Blatty*, 42 Cal. 3d at 1046).  The Supreme Court of California has stated that

7   defamatory statements referring to a group exceeding twenty-five members preclude an

8   individual plaintiff from showing the statements relate to that individual, unless the latter

9   exception applies.  *Blatty*, 42 Cal. 3d at 1046.

10   Plaintiff Officers do not allege that they belong to all of the groups mentioned.

11   Plaintiff Officers do not allege they were members of any former or then-current

12   investigations unit.  They do not allege they were council members.  Accordingly,

13   Plaintiff Officers do not state claims insofar as they are based on membership in these

14   groups.

15   As for the other groups, Plaintiff Officers allege that they held the titles of "Police

16   Officer or Police Sergeant."  [Compl. ¶ 4.]  They also allege that they "each occupied

17   either leadership roles with the [CPOA] or [] were associated with such leadership."

18   [Compl. ¶ 9.]  This potentially brings them within only the following groups: the police

19   department, "few members of my department," the CPOA, members of CPOA, "former

20   staff," "some of the officers," "[t]hese few thugs," and "everyone," which is reasonably

21   read in its context as referring to the police department.  *See Yow*, 550 F. Supp. 2d at

22   1190 (stating the standard is who a reasonable reader can infer a statement to refer to in

23   the context); *Barger*, 564 F. Supp. At 1154–55 (same).

24   First, Plaintiff Officers do not allege they constituted "former staff" at the time of

25   the statements in November 2014.  The Complaint states the Terminated Plaintiffs were

26   terminated between December 2014 and July 2015.  [Compl. ¶ 35.]  Plaintiff Navarro has

27   not been terminated.

28

The Court turns to the remaining groups.  Defendant Bostic referred to the police department and the CPOA, and a few members of those groups.  Plaintiff Officers must either plead that these groups are so small that the statements can be reasonably understood as referring to each of the eight Plaintiff Officers, or that circumstances give rise to that reasonable implication.  Plaintiffs do not indicate how many leaders or members of the CPOA existed at the time, or how many members of the police department there were.

As a result, Plaintiff Officers do not adequately allege that Defendant Bostic's statements refer to them personally.  See *Barger v. Playboy Enterprises, Inc.*, 564 F. Supp. 1151, 152–53 (N.D. Cal. 1983), affi'd, 732 F.2d 163 (9th Cir. 1984) (stating that the plaintiffs did not adequately allege—for purposes of a 12(b)(6) motion to dismiss— that an article referred to them where it referred to groups and the plaintiffs did not state the number of group members).  This conclusion applies equally to Plaintiff Officers' defamation and false light claims.

Lastly, California defamation law requires that Plaintiff Officers allege a third party understood Defendant Bostic's statements as referring to them.  The Complaint contains no such allegations.

In light of the foregoing determinations, there is no need to reach the issue of absolute immunity that Defendants also raise here.

Accordingly, Defendants' motion to dismiss Count Three is **GRANTED** and Count Three is **DISMISSED WITHOUT PREJUDICE**.

### 4.    Count Four

Plaintiff Officers bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 et seq., against Defendants Bostic, Warne, and City.  Plaintiff Officers contend that Defendants violated FLSA's overtime provisions.  *See* 29 U.S.C. § 207. Defendants move to dismiss these claims based on two arguments.  First, Defendants argue Plaintiff Officers' claims are insufficient under Ninth Circuit precedent set forth in *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (2014).  Second, Defendants

argue these claims do not fall within the FLSA; rather, they sound in breach of contract. Plaintiffs oppose both grounds for dismissal.

### a.    Fair Labor Standards Act, 29 U.S.C. §§ 207 et seq.

The FLSA sets the national minimum wage, and requires that, where an employee works over forty hours in one work week, the employee must be paid "at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207; *Landers*, 771 F.3d at 640 (internal quotations omitted) (citing *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1009–10 (9th Cir. 2011)).

### b.    Plaintiffs' Allegations

Plaintiffs allege they "are non-exempt rank and file employees who regularly suffered or were permitted to work in excess of forty (40) hours a week, but do not receive compensation for all such time worked at the appropriate rate of one and one-half times their regular rate of pay from Defendants." [Compl. ¶ 70.] "More specifically, the CPOA agreed to a collective bargaining agreement in 2013 or 2014 that mandated pay raises [and] [t]hose pay raises should have raised the base rate of pay, in turn raising the overtime rate of pay for the Plaintiff Officers." [*Id.* at ¶ 71.] Plaintiff Officers allege that Defendants Warne and Bostic stated that they would not pay the officers at that rate. [*Id.*]

### c.    Discussion

First, Defendants move to dismiss because Plaintiff Officers do not allege that they each worked more than forty hours in a given workweek without being compensated for the overtime, as required by the Ninth Circuit's opinion in *Landers*. *See* 771 F.3d at 644–646. Plaintiffs oppose, stating their allegations are sufficient under *Landers*. In *Landers*, the plaintiff alleged that the defendants had a compensation scheme whereby they paid employees for each "piece" of work they completed, violating the FLSA overtime provisions. The allegation most specific to the plaintiff in the *Landers* complaint stated:

> [T]he named plaintiff ... [was] entitled to a minimum wage and
> an overtime hourly wage of time and one-half [his] regular
> hourly wage for all hours worked in excess of forty hours per

> week, the named plaintiff ... worked more than 40 hours per
> week for the defendants, and the defendants willfully failed to
> make said overtime and/or minimum wage payments.

*Id.* at 646.

The Ninth Circuit held that in order to survive a motion to dismiss, a plaintiff must, at minimum, "allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages." *Id.* at 646. It stated that "plausibility" is context-specific, and that a plaintiff could establish a plausible claim in various ways, by estimating his hours in an average workweek during an applicable period and the average rate he was paid during that period, the amount of overtime pay he believes he is owed, or other facts that would allow the court to find the claim plausible. *Id.* at 645. The Ninth Circuit concluded that the plaintiff "did not allege facts showing that there was a given week in which he was entitled to but denied minimum wages or overtime wages." *Id.* at 646. It found the plaintiff's allegations to be too generalized to be plausible. *Id.* at 646.

Here, Plaintiff Officers do not satisfy the *Landers* standard. They do not provide sufficient context for their claims. They do not allege any facts regarding their hours or compensation during a given workweek. Their allegations are too generalized to allow the Court to find Plaintiff Officers' claim that they were denied overtime pay to be plausible.

Second, Defendants argue Plaintiff Officers' claim fails because their theory of how Defendants' violated the overtime provisions does not bring it within the FLSA's purview. Defendants are correct. Plaintiffs' theory is that the CPOA entered into a collective bargaining agreement and, pursuant to that agreement, Plaintiff Officers' base rate of pay was to be raised. Plaintiff Officers' allege their base rate of pay was not raised. As a result, when they were compensated for overtime, the rate calculated was based on the original rate of pay and not the raised rate. Accordingly, whether Plaintiff Officers' theory states a claim turns on how "the regular rate at which [the employee] is employed" is interpreted. *See* 29 U.S.C. § 207.

The Supreme Court has held that "regular rate" means "the hourly rate actually paid for the normal, non-overtime workweek." *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204 (1947) (citing *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944) (internal quotations omitted)). "The regular rate is thus an actual fact." *Id.* (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). Accordingly, to determine whether the correct amount of overtime compensation was paid, courts look to what rate was actually paid for non-overtime work, and then determine what amount should have been paid for overtime, based on their calculation of the regular rate of pay. Plaintiff Officers' allegations attempt to frame a dispute regarding enforcement of the collective bargaining agreement as a FLSA violation. *See Atlanta Prof'l Firefighters Union v. Atlanta*, 920 F.2d 800, 806 (11th Cir. 1991) (finding a failure to calculate holiday and relief days in the overtime calculation—which was required by contract but not by the FLSA—was a breach of contract and not a violation of the FLSA). Plaintiffs do not allege they were not paid at one and one-half times their regular rate of pay, as defined by the Supreme Court. Plaintiffs do not allege they were not paid a base rate of pay above minimum wage. Accordingly, Plaintiffs do not plausibly allege any violation of the FLSA.

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' FLSA claim is **GRANTED**. Count Four is **DISMISSED WITHOUT PREJUDICE**.

### 5.   Count Five

As discussed *supra*, Count Five is dismissed without prejudice.

## D.   Motion to Strike

Defendants move to strike Plaintiffs' Complaint under California's anti-SLAPP statute. *See* Cal. Code Civ. P. § 425.16. However, because all causes of action in Plaintiffs' Complaint have now been dismissed for failure to state a claim, the Court **DENIES** the motion to strike **WITHOUT PREJUDICE**.

//

//

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss. [Doc. Nos. 7, 8.]  Plaintiffs' request for leave to amend the Complaint is **GRANTED** as to claims that are dismissed <u>without</u> prejudice.  Plaintiffs may not reallege claims that have been dismissed with prejudice, nor may they amend the Complaint to add parties or Counts without first seeking permission from the Court.

Regarding Defendants' motion to strike, it is **DENIED WITHOUT PREJUDICE**.  [Doc. No. 9.]

**IT IS SO ORDERED.**

Dated:  January 4, 2016

_____
Hon. Michael M. Anello
United States District Judge