**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOSEPH BIELMA, FRANK URIARTE, RUDY ALARCON, LUIS CASILLAS, STEVEN GARCIA, GERMAN DURAN, GABRIEL RODRIGUEZ, ISAIAS NAVARRO, and STEPHEN FRAZIER,

Plaintiffs,

v.

MICHAEL BOSTIC, CITY OF CALEXICO, RICHARD WARNE, GONZALO C. GERARDO, and MARITZA HURTADO,

Defendants.

Case No.: 15cv1606-MMA (PCL)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FAC; AND**

[Doc. No. 28]

**DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FAC**

[Doc. No. 29]

On July 20, 2015, Plaintiffs Joseph Bielma, Frank Uriarte, Rudy Alarcon, Luis Casillas, Steven Garcia, German Duran, Gabriel Rodriguez, Isaias Navarro, and Stephen Frazier filed this action against Defendants Michael Bostic, City of Calexico, Richard Warne, Gonzalo C. Gerardo, and Maritza Hurtado. Defendants moved to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and moved to strike Plaintiffs' Complaint pursuant to Rule 12(f) and California Code of Civil Procedure § 425.16. Doc. Nos. 7, 8, 9. The Court granted Defendants' motion to dismiss, dismissing some claims with prejudice and granting Plaintiffs leave to amend

those claims dismissed without prejudice. Doc. No. 20. The Court denied Defendants' motion to strike without prejudice. Doc. No. 20. Plaintiffs filed a First Amended Complaint ("FAC"). Doc. No. 23. Defendants now move to dismiss and move to strike Plaintiffs' FAC. Doc. Nos. 28, 29. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss and **DENIES** Defendants' motion to strike. Doc. Nos. 28, 29.

## BACKGROUND[1]

Plaintiffs Uriarte, Alarcon, Casillas, Garcia, Duran, Rodriguez, Navarro, and Frazier ("Plaintiff Officers") are or were police officers employed by Defendant City of Calexico ("Defendant City") during the events alleged in the Complaint. Plaintiff Bielma was a former peace officer during the events described. At all relevant times, Defendant Bostic was the chief of police for Defendant City and the Calexico police department, and Defendant Warne was the city manager. Defendant Gerardo was and is a police lieutenant for the City and the police department. Defendant Hurtado was a City Council member for the City.

Prior to November 2014, Plaintiff Alarcon served as the President of the Calexico Police Officer's Association ("CPOA"), Plaintiff Casillas served as the Vice President of the CPOA, and Plaintiffs Uriarte, Garcia, Duran, and Navarro were members of the CPOA Executive Board. Plaintiff Frazier was not an Executive Board member, but "was widely known to be closely associated with such leadership and aligned with [the leaders'] views and actions." FAC ¶ 12. The Executive Board used to "enjoy[] a successful working relationship with the City and the majority of its officials." FAC ¶ 13. The Plaintiff Officers and the CPOA were politically active. Plaintiffs Alarcon,

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Casillas, Duran, and Rodriguez frequently voiced their opinions at City Council meetings. During Defendant Hurtado's campaign for election to City Council in 2010 and again during Defendant Hurtado's campaign for re-election in 2014, Plaintiff Officers "denounce[d]" Defendant Hurtado publically. FAC ¶ 14. Prior to the November 2014 City Council election, Plaintiff Officers and the CPOA "actively opposed" the re-election of Defendant Hurtado and opposed the election of "another." FAC ¶ 21. Plaintiff Officers went to City Council meetings in their CPOA shirts, and Plaintiffs Casillas, Alarcon, and Garcia spoke out against Defendant Hurtado's re-election. In at least some of these instances, Defendant Hurtado was present at the meetings.

"Around this same time, Hurtado [. . .] began to engage in retaliatory actions." FAC ¶ 23. Plaintiffs allege that Defendant Hurtado told Plaintiff Officers that it was not their place to be involved in collective bargaining negotiations or political campaigns. She and other individuals said they were going to "break the union," "charge" the Plaintiff Officers, and have them terminated. FAC ¶ 23. They accused CPOA members of being corrupt and of stealing money. Defendant Hurtado then "employed Bielma to attend a covert meeting at the residence of a criminal suspect that . . . the Plaintiff Officers . . . had arrested." FAC ¶ 24. Defendant Hurtado allegedly solicited a complaint from the individual contending that the Plaintiff Officers, specifically the CPOA president, Plaintiff Alarcon, engaged in excessive force. Plaintiffs allege that Defendant Hurtado was acting in response to "each of the speech activities outlined in this complaint." FAC ¶ 24.

Plaintiffs allege that Defendant City subsequently hired an investigator to investigate the police department "with the hopes of digging up any dirt" on the Plaintiff Officers that could be used as grounds for terminating their employment. FAC ¶ 25. Plaintiffs contend that the investigator's investigation was too wide-ranging, and that the Plaintiff Officers were not adequately notified of its scope and nature. During the investigation, "the officers were questioned about their protected political activities, clearly demonstrating that these were reasons behind the investigation." FAC ¶ 25.

In the 2014 election, Defendant Hurtado and the other candidate that the Plaintiff Officers had opposed were elected to City Council. By the time of the election, Defendant City had hired Defendant Warne as an interim city manager "to attack[] the CPOA and its leadership, the Plaintiff Officers." FAC ¶ 28. Defendant Warne was "hand selected by Hurtado." FAC ¶ 28. Defendant Warne then fired the chief of police "because he was perceived to be pro-cop, and because he had a positive relationship with the CPOA." FAC ¶ 28. Defendant Warne then hired Defendant Bostic to be the chief of police. FAC ¶ 29. Defendant Bostic stated that Hurtado and Warne hired him to clean up the police department.

At a November 19, 2014 press conference, Defendant Bostic stated that some City Council members and members of the CPOA have been using city funds and resources to run an "extortion racket." FAC ¶ 31. He stated that some members of the prior investigation unit of the police department spent thousands of dollars on surveillance equipment. When questioned, the investigations unit reported to Bostic that they had no current investigations. Defendant Bostic stated that the CPOA and Council Members were "using all this equipment to go around tracking, voice recording, taking pictures, trying to get them in compromising positions; Like the Mafioso of New York." FAC ¶ 34. He stated that they were attempting to clean up the mess caused by the former Chief and former staff. Plaintiffs allege these statements are false because the CPOA "has never extorted anyone, and has never gone [sic] engaged in any tracking, voice recording, or taking of pictures for the purpose of extorting." FAC ¶ 35. "No members of the CPOA have purchased surveillance equipment after Bostic took office." FAC ¶ 35. The officers were working on a multitude of cases and Defendant Bostic knew that.

Between December 2014 and July 2015, Plaintiffs Uriarte, Alarcon, Casillas, Garcia, Duran, Rodriguez, and Frazier were each allegedly fired for "innocuous, petty mistakes" that "do not justify termination." FAC ¶ 40. The FAC also states that the excessive force allegation "involving Plaintiff Alarcon" served as the basis for the

"alleged termination of various of the Plaintiff Officers." FAC ¶¶ 24, 40. Plaintiff Navarro "has been subjected to a retaliatory investigation." FAC ¶ 52.

In July 2015, Plaintiff Bielma, "previously a confidant and supporter of Defendants, [. . .] blew the whistle to the Department of Justice by making a written complaint of corruption by Bostic and Warne." FAC ¶ 42. Plaintiff Bielma's complaint states that Defendants Bostic and Gerardo recommended that an officer named Acuna take over as CPOA President, as Plaintiff Casillas's employment had been terminated. Plaintiff Bielma's complaint states that Defendants Bostic and Gerardo told Acuna that they would "take care of him" if he became President. FAC ¶ 44. The complaint contends that Defendants Bostic and Gerardo intimidated and coerced Acuna to lie regarding the excessive use of force charges against Plaintiff Alarcon. Defendants Bostic and Gerardo allegedly believed Acuna was untruthful during the initial investigation regarding the excessive force claims. FAC ¶ 46. Accordingly, they believed they had to fire Acuna because otherwise "Alarcon and the other Plaintiff Officers here, could demonstrate disparate [sic] between firing them and not firing Acuna." FAC ¶ 46. "After all, the allegations made against Acuna were similar to the allegations made against the involved Plaintiff Officers." FAC ¶ 46. According to Plaintiff Bielma, Defendants Bostic and Gerardo conspired to fire Acuna, tell Acuna to request a Skelly hearing[2] before Defendant Bostic, and have Acuna lie during it. Acuna was to say he was previously not truthful during the investigation because he was intimidated "by the prior police administration and the Plaintiff Officers." FAC ¶ 46. He was also supposed to say that he saw Plaintiff Alarcon use excessive force. Defendants Bostic and Gerardo told Acuna that doing so would save his job. "The allegations in Bielma's complaint came to happen." FAC ¶ 50. Acuna was served with termination papers and he requested a

---

[2] The term "Skelly hearing" derives from *Skelly v. State Personnel Board*, 539 P.2d 774 (1975), which held that public employees have property interests in their continued employment for due process purposes. *Cason v. San Diego Transit Corp.*, No. 10CV0098-IEG (MDD), 2011 WL 1596315, at *2 n.1 (S.D. Cal. Apr. 25, 2011). "A Skelly hearing is a pre-disciplinary, administrative hearing, during which a public employee has an opportunity to present his version of relevant events." *Id.*

Skelly hearing.[3] Defendants Gerardo and Bostic have harassed and intimidated Plaintiff Bielma by threatening to prosecute him because they wish to "keep him from disclosing the [information contained in his complaint to the Department of Justice]." FAC ¶ 52.

Lastly, Plaintiff Officers allege they have all worked over forty hours per week and have not been compensated adequately. Plaintiff Officers allege "the CPOA agreed to a collective bargaining agreement in 2013 or 2014 that mandated pay raises." FAC ¶ 84. "Those pay raises should have affected the base rate of pay." FAC ¶ 84. Defendants Warne and Bostic "stated that they would not pay the officers at the appropriate rate and that they didn't care about the agreement." FAC ¶ 86.

Plaintiffs assert the following causes of action in the FAC: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983;[4] (2) a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 et seq.; (3) violations of 42 U.S.C. § 42 U.S.C. § 1985(1) and (2); (4) violations the Public Safety Officers Procedural Bill of Rights Act ("POBRA") pursuant to California Government Code §§ 3300 et seq.; (5) violations of the Meyers-Milias-Brown Act ("MMBA") pursuant to California Government Code § 3502 and § 3506; (6) state law claims for defamation and false light.

## LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Ripeness is an issue of a court's subject matter jurisdiction and is properly attacked under Rule 12(b)(1). *See Ray Charles Foundation v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015). The ripeness doctrine is meant to prevent premature adjudication of issues that do not rise to the level

---

[3] The Complaint is silent as to whether the Skelly hearing occurred and if so, what happened at the hearing.

[4] Any further reference to "§ 1983" or "section 1983" refers to 42 U.S.C. § 1983.

of a case or controversy. *See Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 580 (1985). Ripeness "is peculiarly a question of timing, designed to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (internal quotations and citations removed). "Because ripeness is peculiarly a question of timing, we look at the facts as they exist today in evaluating whether the controversy before us is sufficiently concrete." *Assiniboine and Sioux Tribes v. Bd. of Oil and Gas*, 792 F.2d 782, 788 (9th Cir. 1986) (internal quotations omitted).

Courts consider two factors in the ripeness analysis: (1) whether delayed review of the issue would cause hardship to the parties; and (2) whether the issues are fit for judicial decision or would benefit from further factual development. *Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983).

**B. Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**C. Motion to Strike**

California's anti-SLAPP statute provides a mechanism for striking "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *See* Cal. Code. Civ. P. § 425.16. "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court."[5] *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–73 (9th Cir. 1999)). However, California's anti-SLAPP statute does not apply to federal law causes of action. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2009). "Resolution of an anti-SLAPP motion requires the court to engage in a two-step

[5] Recently, this has been called into question, though it remains law. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring) ("*Newsham* is wrong and should be reconsidered.").

process." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003) (internal citations and quotations omitted). First, the defendant must make a "threshold showing that the challenged cause of action is one arising from protected activity." *Id.* Second, the plaintiff must demonstrate a probability of prevailing on the claim. *Id.*

## DISCUSSION

### A. Requests for Judicial Notice

As an initial matter, Plaintiffs request judicial notice of Plaintiff Casillas's government claim for damages. Doc. No. 30-1. Generally, a district court's review of a 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)). However, without converting a motion to dismiss into a motion for summary judgment, a court may take judicial notice of matters submitted as part of a complaint, or those that are not but whose authenticity is not contested and where the plaintiff's complaint relies on them. *Lee*, 250 F.3d at 688. A court may take judicial notice of matters of public record. *Id.* at 688–89 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (internal quotations omitted). Plaintiff Casillas's government claim relates to the disposition of an issue before the Court, which is whether Plaintiffs have satisfied the Government Claims Act requirements. Also, Plaintiff Casillas's government claim is a matter of public record and Defendants do not dispute its authenticity nor object to Plaintiffs' request for judicial notice of the record. Accordingly, the Court **GRANTS** Plaintiffs' request for judicial notice.

### B. Defendants' Motion to Dismiss

Defendants move to dismiss all of Plaintiffs' claims based on ripeness grounds pursuant to Rule 12(b)(1) or for failure to state a claim pursuant to Rule 12(b)6).

//

//

*1. Plaintiffs' § 1983 First Amendment Retaliation Claims*

All of the plaintiffs allege First Amendment violations under § 1983 against all of the defendants, including Defendant City, a municipality.

**a. Ripeness**

As a preliminary matter, under Rule 12(b)(1), Defendants move to dismiss Plaintiff Officers' § 1983 retaliation claims that are based on the termination of their employment, arguing that they are unripe because some of the plaintiffs have pending administrative appeals contesting the propriety of the terminations. Defendants made the same argument in their motion to dismiss the original Complaint, which the Court rejected. *See* Doc. No. 20. In their motion to dismiss the FAC, Defendants rely on the same cases that the Court previously deemed unpersuasive and distinguishable. *See* Doc. No. 20, pp. 12–15. The Court's original reasoning and analysis remains applicable, and the Court again declines to dismiss Plaintiffs' § 1983 claims on ripeness grounds.

**b. Individual Liability**

Pursuant to Rule 12(b)(6), Defendants move to dismiss Plaintiffs' § 1983 claims for First Amendment violations for failure to state a claim. To state a claim for a violation of section 1983, a plaintiff must plead that the defendant acted under color of law, and that the defendant's actions deprived the plaintiff of a right secured by the United States Constitution. A defendant acts under color of law when the defendant acts or purports to act in the performance of official duties under state, county, or municipal law. *See Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006). Regarding Defendant Hurtado, Plaintiffs allege that Defendant Hurtado acted outside of her role as City Council member. The FAC, like the original Complaint, alleges that "all allegations against Hurtado involve actions taken by her not while engaging in legislative or other activities in her formal role as City Council member." FAC ¶ 9. "[T]he actions she has taken are outside of her role as City Council member." FAC ¶ 9. Accordingly, Plaintiffs cannot state a § 1983 claim against Defendant Hurtado because Plaintiffs allege that she was not acting under the color of state law. Thus, the Court **GRANTS** Defendants'

motion to dismiss Plaintiffs' § 1983 claim as to Defendant Hurtado. Because Plaintiffs would not be able to allege "other facts consistent with the challenged pleading," the Court **DISMISSES** Plaintiffs' § 1983 claim against Defendant Hurtado **WITH PREJUDICE**. *See Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 297 (9th Cir. 1990).

Likewise, the FAC does not sufficiently allege that Defendants Bostic and Gerardo acted under color of state law when they allegedly threatened to prosecute Plaintiff Bielma "in order to silence him and thereby suppress his First Amendment rights and stop him from engaging in protected speech and reporting the corruption Bostic and Gerardo have engaged in." FAC ¶¶ 42, 55. Despite the FAC's conclusory allegations that Defendants Bostic and Gerardo acted under color of state law "in doing the things alleged herein," the FAC does not indicate that Defendants Bostic and Gerardo were acting in their official capacities as chief of police and lieutenant in threatening Plaintiff Bielma. FAC ¶¶ 6, 8. Plaintiffs do not allege that Plaintiff Bielma was an employee of the City during the events described in the FAC. Also, Defendants Bostic and Gerardo are not alleged to have the authority to "prosecute" Plaintiff Bielma. Lastly, Plaintiff Bielma only alleges that Defendants Bostic and Gerardo threatened him (*i.e.*, Plaintiff Bielma does not state a claim against any of the other defendants). Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff Bielma's § 1983 claim as to all Defendants. Because Plaintiff Bielma has already had an opportunity to amend and amendment would be futile, the Court **DISMISSES** Plaintiffs' § 1983 claim against Defendant Hurtado **WITH PREJUDICE**.

The Court turns to the remaining § 1983 claims. To state a claim for First Amendment retaliation against a government employer, a public employee must demonstrate that: (1) he or she spoke on a matter of public concern, *i.e.*, engaged in "protected speech;" (2) as a private citizen; (3) his or her speech was a substantial or motivating factor in an adverse employment action taken against them; (4) the government employer did not have adequate justification for treating the employee differently from other members of the public; and (5) the state would not have taken the

adverse employment action absent the protected speech.[6] *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1067, 1067 n.4 (9th Cir. 2013) (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)); *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Whether the speech regards a matter of public concern depends on its "content, form, and context." *Connick v. Myers*, 461 U.S. 138, 159 (1983).

The above legal standard applies to Plaintiff Officers' § 1983 claims because they were public employees at the time of the allegedly retaliatory conduct. Plaintiff Officers sufficiently plead that Defendants Bostic, Warne, and Gerardo were acting under color of state law for the purposes of their claims because they were acting in their capacities as chief of police, city manager, and lieutenant when they took adverse actions against Plaintiff Officers, as discussed below. The FAC sufficiently pleads that Plaintiff Officers spoke as private citizens on matters of public concern—such as Defendant Hurtado's fitness for City Council—when Plaintiff Officers spoke at City Council meetings in their capacities as CPOA members. *See Coszalter*, 320 F.3d at 973 (stating speech regarding information that helps the public "make informed decisions about the operation of their government merits the highest degree of first amendment protection") (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)); *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013) (stating speech made in role as head of police officers' union is made in capacity as private citizen). Although Plaintiff Frazier was not a member of the CPOA, the FAC alleges that he also publically denounced Defendant Hurtado at City Council meetings or other public forums. FAC ¶ 15 ("[T]he Plaintiff Officers used these forums to denounce Hurtado and her election and re-election campaign."). Plaintiff Officers were speaking in their capacities as private citizens because they were not

---

[6] Regarding the final two factors, where a plaintiff meets the first three factors, the burden then shifts to the government actor to show that, under the *Pickering* balancing test, the government had an adequate justification for treating the employee differently. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (citing *Pickering v. Bd. of Ed. Of Tp. High School District 205, Will County, Illinois*, 391 U.S. 563 (1968)). If the government does not meet that test, it can avoid liability by demonstrating that the government would have taken the adverse action in the absence of the protected speech. *Id.* Thus, the Court need not consider Plaintiffs' allegations as to the final two factors.

speaking "pursuant to their official duties." *See Dahlia*, 735 F.3d at 1068 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

Further, Plaintiff Officers sufficiently plead that they suffered adverse employment actions. Seven Plaintiff Officers—Uriarte, Alarcon, Casillas, Garcia, Duran, Rodriguez, and Frazier—allege that their employment with the City of Calexico has been terminated in retaliation for their protected speech. Plaintiff Navarro alleges he was investigated in retaliation for his protected speech. "To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind." *Coszalter*, 320 F.3d at 975. "Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden." *Id.* The inquiry is rather whether the action is "reasonably likely to deter employees from engaging in protected activity." *See Dahlia*, 735 F.3d at 1078 (quoting *Coszalter*, 320 F.3d at 975). The Ninth Circuit has found that investigations—both disciplinary and criminal—and terminations of employment are adverse employment actions. *See Coszalter*, 320 F.3d at 975; *see also Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Moreover, Plaintiff Officers sufficiently plead that their speech was a substantial motivating factor in the adverse employment actions. Plaintiff Officers allege Defendant Hurtado was motivated by Plaintiff Officers' political activities in making certain statements and taking certain actions. Plaintiffs allege Defendant Hurtado stated that the CPOA and Plaintiff Officers should not be involved in political campaigns, and that she wanted to "break the union" and terminate Plaintiff Officers. FAC ¶¶ 23, 24. Although Plaintiffs cannot state a claim against Defendant Hurtado because Plaintiffs allege she was not acting under color of state law, the FAC alleges that that the motives of Defendants Bostic, Warne, and Gerardo were in line with Defendant Hurtado's. For example, the FAC alleges that Defendant Hurtado had a hand in selecting Defendant Warne as interim city manager and that Defendant Warne was hired to attack the CPOA and its leadership. FAC ¶ 28. Defendant Warne allegedly fired the prior chief of police

in part due to the prior chief's positive relationship with the politically-active CPOA, and hired Defendant Bostic as chief of police. FAC ¶ 28.

Further, "Bielma has indicated that Hurtado, Warne and Bostic have expressed an uncontrollable desire to do whatever it takes to terminate the Plaintiff Officers at whatever cost is needed." FAC ¶ 42. "In Bielma's written complaint, he indicates that Bostic and Gerardo are engaging in illegal actions by attempting to dominate the CPOA and to quash the CPOA from exercising its rights." FAC ¶ 43. The FAC states that according to Defendant Gerardo, Defendant Bostic felt that he needed to get rid of "these guys, to gain control POA [sic] and department." ¶ 48. Further, the FAC is rife with descriptions of Plaintiff Officers—particularly those plaintiffs who are members of the CPOA board—engaging in political speech and other public communications in their capacities as CPOA members. Significantly, the FAC explicitly alleges that "Defendants Hurtado and Gerardo have indicated to people that the adverse actions taken here are taken due to the Plaintiff Officers' protected speech activities," and "have further indicated that Warne and Bostic were hired specifically to get rid of the Plaintiff Officers for that speech." FAC ¶ 55. Lastly, the FAC states that "Defendants Hurtado, Warne, Bostick [sic] and Gerardo all participated in the decision to terminate the Plaintiff Officers and subject Plaintiff Navarro to a retaliatory investigation, and were aware of that [sic] unconstitutional basis for that decision." FAC ¶ 55. Based on the FAC as a whole, the FAC plausibly alleges that Defendants Bostic, Warne, and Gerardo were motivated in taking adverse employment actions against Plaintiff Officers based on their speech. For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff Officers' § 1983 claims as to Defendants Bostic, Warne, and Gerardo.

**c. Municipal Liability**

A local governing body, such as Defendant City, is only liable under § 1983 where "action pursuant to official municipal policy of some nature caused a constitutional tort" and not on the basis of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). To state a claim for First Amendment retaliation against a

municipality, a plaintiff must plead one of the following theories: "(1) the constitutional violation was the result of a governmental policy or a longstanding practice or custom; (2) the individual who committed the constitutional violation was an official with final policy-making authority; or (3) an official with final policy-making authority ratified the unconstitutional act." *Heath v. City of Desert Hot Springs*, 618 F. App'x 882, 885 (9th Cir. 2015).

Here, Plaintiffs allege all three theories apply. As was the case with the original Complaint, the FAC does not allege facts in support of a governmental policy or longstanding practice or custom of terminating employees in retaliation for First Amendment-protected speech. Here, Plaintiffs attempt to allege an unconstitutional policy or practice by stating that the City has a longstanding practice or policy of delegating the "ultimate responsibility" for discipline to the chief of police and city manager. Doc. No. 30, p. 12. However, Plaintiffs would need to allege a longstanding policy or practice of constitutional deprivations; a policy or practice of simply delegating disciplinary authority to the chief of police and city manager does not suffice. *See Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006). In fact, the FAC states that the CPOA spoke out politically without retaliation for years prior to 2014, indicating that the policy did not cause constitutional deprivations. FAC. ¶ 17. Regarding the third theory, Plaintiffs only state in conclusory fashion that "[t]he City adopted and ratified each of [Defendants'] decisions as alleged herein[.]" FAC ¶ 5.

However, regarding the second theory, Plaintiffs sufficiently state that those responsible for the adverse employment actions had final policy-making authority, or that someone with final policy-making authority ratified the allegedly unconstitutional conduct. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986). "The official must also be responsible for establishing final government policy respecting such activity." *Id.* Here, the FAC alleges

that "[u]nder current City policy and practice, the Chief of Police and City Manager are delegated the final policy making authority with regard to imposing discipline." FAC ¶ 61. And, it alleges that "Warne and Bostic possessed final policymaking authority from the City with respect to discipline and performance of officers, as when carrying out his [sic] actions, acted as a final policymaker for the City." FAC ¶ 62.

Defendants' argument that the Calexico Police Department Policy Manual and Calexico Municipal Code preclude municipal liability is unpersuasive. *See* Doc. No. 7-5. Calexico Municipal Code § 2.02.110 states that the city manager has the power to "appoint, remove, promote and demote any and all officers and employees of the city, except the city attorney." Also, Code § 2.02.180 states that "[i]t shall be the duty of the city manager to perform such other duties and exercise such other powers as may be delegated to him from time to time by ordinance or resolution or other action of the city council." *See* Doc. No. 7-5. According to the allegations in the FAC, which the Court must accept as true for the purposes of the motion to dismiss, the City has delegated final policy-making authority regarding officer discipline to the city manager, who in this case was Defendant Warne. *See Pembaur*, 475 U.S. 469, at 483 n.12 ("[I]f the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability."). Thus, because the FAC alleges Defendant Warne participated in the termination decisions and the decision to investigate Plaintiff Navarro, the FAC sufficiently states a plausible theory of municipal liability.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' remaining § 1983 claims as alleged against Defendant City.

*2. Plaintiffs' Fair Labor Standards Act Claims*

Plaintiff Officers also bring a claim under the FLSA against Defendants City, Bostic, and Warne. The FLSA sets the national minimum wage, and requires that, where an employee works over forty hours in one work week, the employee must be paid "at a rate not less than one and one-half times the regular rate at which he is employed." *See*

29 U.S.C. § 207; *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 640 (2014) (internal quotations omitted) (citing *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1009–10 (9th Cir. 2011)). Plaintiff Officers contend that they have all worked more than forty hours per week and that Defendants did not compensate them in accordance with the FLSA's overtime provisions. *See* 29 U.S.C. § 207. Specifically, Plaintiff Officers allege Defendants Warne and Bostic should have given them pay raises pursuant to a collective bargaining agreement that the CPOA had entered into. FAC ¶ 84. "Those pay raises should have affected the base rate of pay, in turn raising the overtime rate of pay for the Plaintiff Officers." FAC ¶ 84.

In the original Complaint, Plaintiff Officers made the same factual allegations and sued under the same theory of liability. The Court previously dismissed the FLSA claim without prejudice and granted Plaintiff Officers leave to amend to cure the deficiencies the Court delineated in its Order. *See* Doc. No. 20. In the FAC, Plaintiff Officers do not add any additional factual allegations[7] to cure the noted deficiencies. Accordingly, the Court's reasoning in dismissing the same allegations in the original Complaint applies equally to the claims in the FAC. The Court thus **GRANTS** Defendants' motion to dismiss Plaintiff Officers' FLSA claim for the reasons set forth in its previous Order regarding the original Complaint. Because amendment would be futile, the Court **DISMISSES** Plaintiff Officers' FLSA claim **WITH PREJUDICE**.

### *3. Plaintiffs' § 1985 Claims*

Plaintiff Officers bring this cause of action against Defendants City, Bostic, and Gerardo, alleging they conspired to threaten Officer Acuna to lie. Pursuant to Rule 12(b)(1), Defendants argue that Plaintiff Officers' § 1985 claims are unripe because they are based on "the anticipated presentation of false testimony in [the] pending state administrative proceedings." Doc. No. 28-1. In its Order addressing Defendants' motion to dismiss the original Complaint, the Court was unable to reach the issue of ripeness

---

[7] Plaintiffs merely add legal conclusions and allegations of their theory of liability, but no new facts.

because Plaintiff Officers' § 1985 allegations did not satisfy Rule 8 pleading standards. *See* Doc. No. 20; Fed. R. Civ. P. 8. Specifically, the Court could not discern from the Complaint whether any Skelly hearings, or any administrative, civil, or criminal proceedings, had occurred or were merely anticipated, or whether Officer Acuna had lied at any proceeding due to pressure by any of the defendants. In the FAC, Plaintiff Officers again do not state that Acuna has lied in any proceeding. The FAC indicates that that Plaintiff Officers merely anticipate that Acuna may lie at some point in the future, at some proceeding.

Section 1985 prohibits several types of conspiracies. 42 U.S.C. § 1985; *see also Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Section 1985(1) prohibits conspiracies to prevent federal officers from performing their official duties. *Id.* at 724–25. The first part of section 1985(2) prohibits conspiracies to interfere with federal judicial proceedings, while the second part prohibits conspiracies to interfere with state judicial proceedings. A plaintiff alleging the existence of a conspiracy to interfere with state judicial proceedings must allege some "racial or class-based invidiously discriminatory animus" behind the conspiracy. *Id.* at 726 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Here, insofar as Plaintiff Officers wish to bring a claim under § 1985(1), the Court dismissed that claim with prejudice in its previous Order because none of the plaintiffs are federal officers. *See* Doc. No. 20, pp. 17–19. Even were the Court to reconsider the § 1985(1) claim, Plaintiffs again do not allege that any of the plaintiffs are federal officers in the FAC. *See Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717–18 (9th Cir. 1981) (stating section 1985(1) "applies exclusively to federal officers"); *see also Wiseman v. County of Washoe*, 44 Fed. Appx. 776 (9th Cir. 2002).

Plaintiffs' remaining claims under § 1985 also fail. Whether construed as an issue of ripeness or failure to state a claim, Plaintiff Officers' § 1985(2) claims fail because the FAC does not allege that Officer Acuna has lied in any proceedings of any kind, despite that the Court pointed out this deficiency in its previous Order. As the Court stated in its

previous Order, a plaintiff alleging a cause of action under § 1985 must allege that the conspiracy caused their injury. *See Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988). Allegations of witness intimidation are insufficient to state a claim under section 1985 "unless it can be shown the litigant was hampered in being able to present an effective case." *See Mirmehdi v. United States*, 689 F.3d 975, 983 (9th Cir. 2012) (quoting *David v. United States*, 820 F.2d 1038, 1040 (9th Cir.1987)). "This rule applies to both witness intimidation and conspiracy to intimidate a witness." *Id.* (citing *David*, 820 F.2d at 1040).

Accordingly, because Plaintiff Officers' § 1985 claims contain the same deficiencies that the Court addressed in its previous Order, and amendment appears futile, the Court **GRANTS** Defendants' motion to dismiss as to all of Plaintiff Officers' § 1985 claims and **DISMISSES** those claims **WITH PREJUDICE**.[8]

*4. Plaintiffs' State Law Claims*

Plaintiff Officers also allege state law claims arising under the POBRA and the MMBA against Defendant City, and state law causes of action for defamation and false light against Defendant Bostic. Defendants argue that some of Plaintiffs' state law claims seeking damages are barred by the California Government Claims Act, California Government Code §§ 810 *et seq*. After a thorough review of the FAC, the Court determines that Plaintiffs have failed to sufficiently allege compliance with the California Government Claims Act as to any of their state law claims.

**a. The California Government Claims Act**

As a prerequisite to filing a lawsuit for "money or damages" against a public entity, the California Government Claims Act requires that the aggrieved party present a timely administrative claim with the government entity within six months after the cause of action accrued. *Robinson v. Alameda County*, 875 F.Supp.2d 1029, 1043 (N.D. Cal.

[8] Because the Court dismisses Plaintiff Officers' § 1985 claims with prejudice for the foregoing reasons, the Court does not reach the issue of whether Rule 9(b) applies.

2012). Specifically, section 945.4 states "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented [. . .] until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board[.]" *See* Cal. Gov. Code § 945.4. The purpose of the Act is to provide the government entity notice and an opportunity to settle claims before a lawsuit, "to permit early investigation of the facts, to facilitate fiscal planning for potential liabilities, and to avoid similar liabilities in the future." *Robinson*, 875 F.Supp.2d at 1043.

Compliance with the Government Claims Act is "an essential element of a cause of action against a public entity and failure to allege compliance with the claims statute renders the complaint subject to [dismissal]." *Wood v. Riverside Gen. Hosp.*, 25 Cal. App. 4th 1113, 1119 (1994). Accordingly, in order to maintain a cause of action in light of the Government Claims Act, a plaintiff's complaint must allege facts demonstrating or excusing compliance with the claim presentation requirements. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004).

The claims presentation requirement does not apply to actions for injunctive relief, declaratory relief, specific relief, or federal claims. *Robinson*, 875 F.Supp.2d at 1037. However, it does apply where claims for money and damages are "more than incidental" to the other relief sought, such as extraordinary relief. *Id.* at 1045 (internal quotation omitted); *see Lozada v. City and County of San Francisco*, 145 Cal. App. 4th 1139, 1147 (2006).

Here, the FAC does not sufficiently allege compliance with the Act's claim presentation requirements. Plaintiff Officers must comply with the Act because they seek damages for all of their state law claims, and their requests for damages are not merely incidental to their requests for equitable relief.[9] The FAC does not include allegations

---

[9] Plaintiff Officers seek only money damages for the MMBA, defamation, and false light claims. Regarding the POBRA violations, Plaintiff Officers seek civil penalties not exceeding $25,000 for each violation, attorney's fees, actual damages, general and special damages, and punitive damages. ¶¶ 72–

regarding Plaintiffs' compliance with the Government Claims Act.[10] While the Court has taken judicial notice of some government claims filed by the plaintiffs, those claims are insufficient to demonstrate compliance. As an initial matter, it is unclear whether Plaintiffs submitted their claims to the appropriate governing board. *See* Cal. Gov. Code § 900.2. Also, as Defendants point out, none of the plaintiffs' government claims describe Defendant City's alleged failure to disclose information regarding the interrogator and the nature of the investigation prior to interrogations, or Defendant City's allegedly untimely investigation and untimely discipline. *See General Sec. Services Corp. v. County of Fresno*, 2013 WL 1703995, *8 (E.D. Cal. Apr. 19, 2013) (stating that a government claim need not be as detailed as a pleading, but needs to "fairly describe what the entity is alleged to have done"). Yet, Plaintiff Officers allege POBRA violations based on those alleged facts. Accordingly, the government was not provided notice and an opportunity to settle those claims before this lawsuit was filed.

Further, in order to comply with the Act, Plaintiffs not only need to allege proper claim presentation, but also must allege that the government either rejected their claims or the claims are deemed rejected. The FAC is unclear as to how or if the governing board responded to the claims that the Court judicially noticed here. The FAC alleges generally that Plaintiffs have filed some government claims, and indicates that "the City" has not responded to them. *See* FAC ¶¶ 26, 38. It is unclear what claims the allegations refer to. Also, the FAC implies that some of the plaintiffs filed other claims aside from those that the Court has judicially noticed, which "the City" did not respond to, but the FAC is vague regarding their specific content. *See* ¶¶ 38, 39.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff Officers' MMBA claims, POBRA claims, and state law claims for false light and

---

74. The FAC does not specifically request equitable relief, but rather states that under POBRA, "a court may render appropriate injunctive or other extraordinary relief[.]" FAC ¶ 73.

[10] Plaintiffs argue that their allegation that "Plaintiffs have each taken any and all necessary steps to perfect this lawsuit, including the filing of appropriate tort claims" is sufficient to allege compliance. However, the allegation is too conclusory.

defamation. The Court **DISMISSES** Plaintiff Officers' state law claims **WITHOUT PREJUDICE**.

**C. Motion to Strike**

Defendants move to strike Plaintiffs' state law claims under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. *See* Doc. No. 29. However, because all state law causes of action have now been dismissed without prejudice for noncompliance with the Government Claims Act, the Court **DENIES** the motion to strike **WITHOUT PREJUDICE**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Doc. No. 28. Plaintiffs may not reallege claims that have been dismissed with prejudice, nor may they amend the FAC to add parties or causes of action without first seeking permission from the Court. Lastly, the Court **DENIES** Defendants' motion to strike **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: October 24, 2016

Hon. Michael M. Anello
United States District Judge