# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

FRANK URIARTE, RUDY ALARCON, LUIS CASILLAS, STEVEN GARCIA, GERMAN DURAN, GABRIEL RODRIGUEZ, ISAIAS NAVARRO, and STEPHEN FRAZIER,

                                    Plaintiffs,

v.

MICHAEL BOSTIC, CITY OF CALEXICO, RICHARD WARNE, and GONZALO C. GERARDO,

                                    Defendants.

Case No.:  15cv1606-MMA (PCL)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC; AND**

[Doc. No. 42]

**GRANTING DEFENDANTS' MOTION TO STRIKE**

[Doc. No. 43]

Defendants move to dismiss Plaintiffs' Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure 12(b)(1), and move to strike Plaintiffs' state law claims pursuant to California Code of Civil Procedure § 425.16.  *See* Doc. Nos. 42, 43.  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss and **GRANTS** Defendants' motion to strike.  Doc. Nos. 42, 43.

On July 20, 2015, Plaintiffs Joseph Bielma, Frank Uriarte, Rudy Alarcon, Luis Casillas, Steven Garcia, German Duran, Gabriel Rodriguez, Isaias Navarro, and Stephen Frazier filed this action against Defendants Michael Bostic, City of Calexico, Richard Warne, Gonzalo C. Gerardo, and Maritza Hurtado alleging numerous causes of action. Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and moved to strike the state law claims pursuant to California Code of Civil Procedure § 425.16. Doc. Nos. 7, 8, 9. The Court granted Defendants' motion to dismiss, dismissing some claims with prejudice and granting Plaintiffs leave to amend those claims dismissed without prejudice. Doc. No. 20. The Court denied Defendants' motion to strike without prejudice. Doc. No. 20.

Plaintiffs then filed the First Amended Complaint (FAC), and Defendants filed a motion to dismiss and a motion to strike the state law claims. Doc. No. 23. The Court granted in part and denied in part Defendants' motion to dismiss. Doc. No. 35. Specifically, the Court dismissed Plaintiff Bielma's First Amendment retaliation claims as to all Defendants with prejudice and without leave to amend, and dismissed all First Amendment retaliation claims against Defendant Hurtado with prejudice and without leave to amend. The Court also dismissed with prejudice and without leave to amend those claims alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 207 et seq., and violations of 42 U.S.C. § 1985(1) and (2).

The FAC also alleged state law claims for violations of the Public Safety Officers Procedural Bill of Rights Act ("POBRA") pursuant to California Government Code §§ 3300 et seq., violations of the Meyers-Milias-Brown Act ("MMBA") pursuant to California Government Code sections 3502 and 3506, and tort claims for defamation and false light. The Court dismissed those claims without prejudice and with leave to amend.

---

[1] For the purposes of this Order, the Court need not reiterate the full factual background. *See* Doc. Nos. 20, 35.

In particular, the Court found the FAC failed to allege satisfaction of the claims presentation requirements of the California Government Claims Act, California Government Code section 945.4. The Court also denied Defendants' motion to strike the FAC's state law claims without prejudice. Doc. No. 35.

Subsequently, Plaintiffs Frank Uriarte, Rudy Alarcon, Luis Casillas, Steven Garcia, German Duran, Gabriel Rodriguez, Isaias Navarro, and Stephen Frazier filed the SAC, alleging claims against Defendants Michael Bostic, Richard Warne, Gonzalo C. Gerardo and the City of Calexico.[2] Doc. No. 39. The SAC alleges First Amendment retaliation pursuant to 42 U.S.C. § 1983, violations of the MMBA pursuant to California Government Code sections 3502 and 3506,[3] defamation, and false light. Defendants move to dismiss the SAC pursuant to Rule 12(b)(6), and move to strike the state law claims pursuant to California Code of Civil Procedure § 425.16. Doc. Nos. 42, 43.

<u>**LEGAL STANDARD**</u>

**A. Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair

---

[2] In other words, the SAC omits Joseph Bielma as a plaintiff and Maritza Hurtado as a defendant.
[3] Despite that Plaintiffs list claims for violation of the POBRA in the caption of the SAC and in the heading for the second cause of action, Plaintiffs have omitted all factual allegations in support of such claims. Accordingly, the Court infers that Plaintiffs intend to forego such claims. Regardless, dismissal of any claims under the POBRA would be appropriate due to the lack of sufficient factual support.

notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**B. Motion to Strike**

California's anti-SLAPP[4] statute provides a mechanism for striking "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *See* Cal. Code. Civ. P. § 425.16. "Motions to strike a state law claim under California's anti-SLAPP statute may be

---

[4] "SLAPP stands for strategic lawsuits against public participation." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1573 (2005).

brought in federal court," whether the court is sitting in diversity or exercising federal question jurisdiction.[5]  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–73 (9th Cir. 1999)).  However, California's anti-SLAPP statute does not apply to federal law causes of action.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2009).

"Resolution of an anti-SLAPP motion requires the court to engage in a two-step process."  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 733 (2003) (internal citations and quotations omitted).  First, the defendant must make a "threshold showing that the challenged cause of action is one arising from protected activity."  *Id.*   Second, to avoid dismissal, the plaintiff must demonstrate a probability of prevailing on the claim.  *Id.*

## DISCUSSION

### A.    Requests for Judicial Notice

Generally, a district court's review of a 12(b)(6) motion to dismiss is "limited to the complaint."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).  However, without converting a motion to dismiss into a motion for summary judgment, a court may take judicial notice of matters submitted as part of a complaint, or other matters as to which authenticity is not contested and where the plaintiff's complaint relies on them.   *Lee*, 250 F.3d at 688.  A court may also take judicial notice of matters of public record.  *Id.* at 688–89 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (internal quotations omitted).

---

[5] Recently, this has been called into question, though it remains law.  *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring) ("*Newsham* is wrong and should be reconsidered."); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182–83 (9th Cir. 2013) (declining to rehear issue en banc).

Defendants request judicial notice of the following:

1. Copies of Calexico Municipal Code Chapters 2.02, 2.04, 2.10, 2.20, and 2.56;
2. Copies of Calexico Police Department Policy Manual, Chapter 1, sections 200, 300, 340, 344, 346, 1020, 1038, and Organizational Chart;
3. Copies of a Memorandum of Understanding between the City of Calexico and the CPOA and a Memorandum regarding "Tentative Agreement 2012-13 MOU";
4. Copies of City of Calexico Personnel Commission Rules and Regulations 10.05–10.10
5. The administrative appeals for Plaintiffs Duran, Rodriguez, Alarcon, Frazier, Garcia, Casillas, and Uriarte.
6. The fact that the administrative appeals of German Duran and Frank Uriarte have been denied and that in the course of those administrative proceedings, the parties were represented by counsel and were able to subpoena, call, examine, cross-examine, and impeach witnesses, introduce exhibits, and submit briefs to impartial decision makers, who made factual findings and ultimately issued written decisions stating that the City had cause to terminate Duran and Uriarte, and that a written transcript of each proceeding was prepared.
7. The written decisions in the administrative appeals of Frank Uriarte and German Duran.
8. Government Claim for Damages submitted by the Calexico Police Officers' Association, Rudy Alarcon, Luis Casillas, Frank Uriarte, Steven Garcia, German Duran, Gabriel Rodriguez, and Isaias Navarro against the City of Calexico, Betty Kelepecz, and Norm Traub & Associates, which was received by the City on September 10, 2014.
9. Government Claim for Damages submitted by German Duran against the City of Calexico, John T. Quinn, Richard Warne, Michael Bostic, Maritza Hurtado, and John M. Moreno, which was received by the City on June 22, 2015.
10. Government Claim for Damages submitted by Francisco Uriarte against the City of Calexico, John T. Quinn, Richard Warne, Michael Bostic,

Maritza Hurtado, and John M. Moreno, which was received by the City on July 6, 2015.

11. Government Claim for Damages submitted by Luis Casillas against the City of Calexico, John T. Quinn, Richard Warne, Michael Bostic, Maritza Hurtado, and John M. Moreno, which was received by the City on August 13, 2015.

12. Government Claim for Damages submitted by the Calexico Police Officers' Association, Rudy Alarcon, Luis Casillas, Frank Uriarte, Steven Garcia, German Duran, Gabriel Rodriguez, and Isaias Navarro against the City of Calexico, Richard Warne, and Michael Bostic, which is dated December 23, 2014.

13. The fact that Exhibits 2–6 to the Declaration of Gabriela Garcia (Doc. Nos. 7-10, 7-11) (*i.e.*, the government claims referenced in requests for judicial notice 8–12) are the only claims submitted to the City of Calexico before this lawsuit was filed by any of the following individuals: Rudy Alarcon, Luis Casillas, Frank Uriarte, Steven Garcia, German Duran, Gabriel Rodriguez, Isaias Navarro, and Stephen Frazier.

*See* Doc. No. 42-2. Plaintiffs do not oppose any of Defendants' requests for judicial notice.

As an initial matter, the Court has previously taken judicial notice of the documents listed in requests 1–4 and 8–12. *See* Doc. Nos. 20, 35. Accordingly, the Court **DENIES** those requests as moot.

Regarding Defendants' request that the Court take judicial notice of the "administrative appeals"[6] for Plaintiffs Duran, Rodriguez, Alarcon, Frazier, Garcia, Casillas, and Uriarte, the Court **GRANTS** the request **IN PART**. Because the Court resolves all issues raised in Defendants' motion to dismiss the SAC without reference to the administrative appeals of Plaintiffs Rodriguez, Alarcon, Frazier, Garcia, and Casillas, the Court declines to take judicial notice of those "appeals." Further, the Court declines to judicially notice an "administrative appeal" for Plaintiff Uriarte because it is unable to

---

[6] While Defendants refer to the proffered documents as "administrative appeals," the documents are letters from Plaintiffs' counsel to Defendant Bostic and/or Defendant Warne and email correspondence amongst counsel referring to an appeal by Plaintiff Uriarte. *See* Doc. Nos. 7-6, 7-9.

locate anything in the record that can be construed as "an appeal." Rather, based on the email correspondence that Defendants cite to in their request, which refers to Plaintiff Uriarte's then-pending appeal, the Court **GRANTS** judicial notice *only* of the fact that Plaintiff initiated some sort of appeal prior to the date of the correspondence, but declines to take judicial notice of any other facts stated within the correspondence. *See* Doc. No. 7-6. The Court also **GRANTS** judicial notice of the existence of Plaintiffs' counsel's letter to Defendant Bostic seeking to appeal Plaintiff Duran's termination of employment. *See* Doc. No. 7-9. Plaintiffs do not contest the authenticity of either the email correspondence or the letter, and the existence of the appeals has some relevance to Defendants' arguments regarding res judicata.

Regarding request number 6, the Court declines to take judicial notice of the facts asserted at the motion to dismiss stage. Further, the Court is able to resolve the issues before it without reliance on those facts.

Regarding request number 7, the Court takes judicial notice of the *existence* of the arbitrators' decisions, but declines to take judicial notice of the legal effect of those decisions or of the truth of any facts stated within those decisions. The Court is able to resolve the issues before it without relying on the veracity of the facts stated in the appeals.

Regarding request number 13, the Court declines to take judicial notice of the fact "that Exhibits 2–6 to the Declaration of Gabriela Garcia . . . are the only claims submitted to the City of Calexico before this lawsuit was filed by" Plaintiffs Alarcon, Casillas, Uriarte, Garcia, Duran, Rodriguez, Navarro, and Frazier because the Court addresses all issues raised in Defendants' motion to dismiss without reference to or reliance on that fact. "[J]udicial notice is inappropriate where the facts to be noticed are not relevant to the disposition of the issues before the court." *Kuzmenko v. Lynch*, 606 F. App'x 399 (9th Cir. 2015) (citing *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998)).

//

**B.     Defendants' Motion to Dismiss**

Pursuant to Rule 12(b)(6), Defendants move to dismiss Plaintiff Uriarte's and Plaintiff Duran's First Amendment retaliation claims and their claims under the MMBA because they are "precluded by the unsuccessful administrative appeals of their termination." *See* Doc. No. 42-1. Also, Defendants argue the MMBA claims are subject to dismissal because there is no private right of action under the MMBA. Lastly, Defendants move to dismiss all of the Plaintiffs' claims for defamation and false light because Defendant Bostic is immune from liability for his statements.

*i.     California Government Claims Act*

As an initial matter, Defendants do not move to dismiss any claims in the SAC on the grounds that they were not presented properly under the Government Claims Act, as Defendants had with regard to the FAC. Further, as explained below, the Court grants Defendants' requests to dismiss and/or strike all state law claims. Accordingly, the Court declines to *sua sponte* analyze claim presentation, and turns to Defendants' proffered grounds for dismissal.

*ii.     Claim Preclusion*

Defendants argue the Court should dismiss Plaintiffs Uriarte and Duran's section 1983 and MMBA claims based on the preclusive effect of the unfavorable decisions that two arbitrators rendered in Plaintiffs' respective administrative appeals. Specifically, Defendants argue that claim preclusion applies, meaning Plaintiffs Uriarte and Duran are barred from litigating any "termination-related claims." *See* Doc. Nos. 42, 48 (clarifying that Defendants rely exclusively on the doctrine of claim preclusion, and not issue preclusion). Defendants state that "the only right of review available to Duran and Uriarte" is the right to file a petition for a writ of mandate in California Superior Court, pursuant to California Code of Civil Procedure section 1094.5. *See* Doc. No. 42-1. Plaintiffs argue their claims are not precluded because the arbitrators did not "actually decide" whether Plaintiffs "were retaliated against due to the exercise of the First Amendment rights." *See* Doc. No. 44. Plaintiffs contend the arbitrators had "no

jurisdiction to make such a finding" because "the arbitrator[s] [are] limited purely to determining whether or not the employee[s] committed the alleged policy violations or not." *See* Doc. No. 44.

Pursuant to 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered." *See Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994). Although section 1738 does not contemplate unreviewed state administrative decisions, such decisions may have preclusive effect in federal court as a matter of federal common law, so long as they meet the fairness requirements described in *United States v. Utah Construction & Mining Company*, 384 U.S. 394 (1966). *See id.*; *see also Univ. of Tennessee v. Elliot*, 478 U.S. 788, 794 (1986)). Under *Utah Construction*, it is fair to give preclusive effect to an administrative decision if (1) "the administrative agency act[ed] in a judicial capacity;" (2) "the agency resolv[ed] disputed issues of fact properly before it;" and (3) "the parties ha[d] an adequate opportunity to litigate." *Id.*

Once satisfied that an administrative proceeding is sufficiently judicial in character pursuant to *Utah Construction*, federal courts turn to the state's rules of preclusion to define the preclusive effect of the administrative decision. *See id.*; *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012); *Eaton v. Siemens*, No. 2:07-CV-00315-MCE-CKD, 2012 WL 1669680, at *6 (E.D. Cal. 2012), *aff'd*, 571 Fed. Appx. 620 (9th Cir. 2014). There are two doctrines of preclusion: claim preclusion, which may also be referred to as res judicata, and issue preclusion, which may also be referred to as collateral estoppel. *See White*, 671 F.3d at 926; *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (2004). Claim preclusion dictates that "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *White*, 671 F.3d at 926 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In other words, "[r]es judicata bars the litigation not only of issues that were actually litigated but also issues that *could have been* litigated." *See Fed'n of Hillside & Canyon Ass'ns*, 126 Cal. App.

4th at 1202 (emphasis added). Under California law, two proceedings address the same claim if they arise out of the same "primary right," which is "the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Id.* In addition to identity of claims, in order for res judicata to apply, "the decision in the prior proceeding [must be] final and on the merits" and "the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Id.*; *see Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010).

Here, in support of their arguments, Defendants request judicial notice of the arbitrators' written decisions in Plaintiffs Uriarte and Duran's administrative appeals. As stated above, the Court takes judicial notice of the existence of the written decisions, but not the truth of the facts stated within. While these decisions may ultimately have some preclusive effect on the pending claims, Defendants have not satisfied their burden in establishing the requirements of res judicata at this point in the litigation. *See Patel v. Crown Diamonds, Inc.*, 247 Cal. App. 4th 29, 40 (2016) (stating that the party asserting collateral estoppel or res judicata bears the burden of establishing their application); *Fed. Home Loan Bank of San Francisco v. Countrywide Fin. Corp.*, 214 Cal. App. 4th 1520, 1527 (2013) (same). In particular, the Court cannot determine, based on the facts before it, whether the arbitrators' decisions are final for the purposes of res judicata. Under California law, a decision is not final for res judicata purposes where it is "still open to direct attack by appeal or otherwise." *See Nat'l Union Fire Ins. Co. v. Stites Prof. Law Corp.*, 235 Cal. App. 3d 1718, 1726 (Ct. App. 1991), *modified* (Nov. 20, 1991); *Long Beach Unified Sch. Dist. v. State of California*, 225 Cal. App. 3d 155, 168–69 (1990), *modified* (Nov. 15, 1990). In other words, a decision is not final if the time for filing an appeal or petitioning for a writ of mandate have not yet expired, or if either an appeal or a petition for a writ of mandate have been filed and are currently pending. *See Long Beach Unified Sch. Dist.*, 225 Cal. App. 3d at 169; *San Remo Hotel v. City & Cty. of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998). Defendants argue Plaintiffs may seek direct review by filing writs of mandate pursuant to California Civil Code section 1094.5,

but Defendants do not argue—let alone establish—that Plaintiffs did not do so, or that the time for doing so has expired. Accordingly, Defendants have not established that the decisions are final.

Moreover, the record is either unclear or silent regarding other pertinent facts. For example, it is unclear what authority provided for and governed the administrative appeals. In support of their motion to dismiss, Defendants request judicial notice of various documents, such as several sections of the Calexico Code of Ordinances, several policy sections of the Calexico Police Department Policy Manual, Memoranda of Understanding ("MOU") between the City of Calexico and the Calexico Police Officers' Association ("CPOA"), and Personnel Commission Rules and Regulation sections. However, Defendants do not explain what, if any, of the above authority provided for and governed Plaintiffs' Duran and Uriarte's arbitration proceedings, and it is not readily apparent from the documents presented. In fact, those documents, in combination with the arbitrators' written decisions, compound the confusion surrounding the appeals.

To illustrate, Calexico Code of Ordinances, chapter 2.20 establishes a "personnel commission" consisting of five members, and states that "it shall be the duty of the personnel commission to hear appeals of city personnel regarding discipline, demotion or dismissal." *See* Doc. No. 7-5, Exh. E. The copy of the Code sections that Defendants produce is dated September 3, 2015. Yet, Plaintiffs Duran and Uriarte did not appeal to a "personnel commission." Rather, they proceeded before individual arbitrators. Further, the MOUs that Defendants submit do not appear relevant because they expired well before Plaintiffs' administrative appeals.[7] *See* Doc. No. 7-9 (including copies of agreements up to June 30, 2012). Also, the validity and effect of the memorandum regarding a "tentative agreement" is unclear. *See* Doc. No. 7-9. The memorandum,

---

[7] It appears that Plaintiff Duran's attorney notified Defendant Bostic of Duran's intent to appeal his termination of employment on January 23, 2015. *See* Doc. No. 7-9. The Court is unaware of similar communication on behalf of Plaintiff Uriarte, but based on the e-mail exchange between counsel that Plaintiff Uriarte appealed his termination of employment prior to March 12, 2015. *See* Doc. No. 7-6.

dated June 28, 2012, states that the "[c]urrent 2011-2012 MOU will remain the same except for" two modifications, including a modification stating that appeals "of discipline that involve[] a loss of pay or a transfer for the purposes of punishment will be before an Administrative Law Judge and not the Personnel Commission." *See* Doc. No. 7-9. Accordingly, this agreement, assuming it had force and effect, only modified the MOU that expired in 2012. Further, it provided for appeal to an Administrative Law Judge, but the record does not establish that the arbitrators that decided the appeals were Administrative Law Judges pursuant to the Administrative Procedure Act or state law.

Similarly, even were the Court to take judicial notice of the facts stated within the arbitrators' written decisions, the decisions do not resolve the Court's lingering questions. In the decision pertaining to Plaintiff Uriarte's appeal, the arbitrator notes that the "Arbitration arises pursuant to City of Calexico's (hereinafter "City") Municipal Code under which" the arbitrator was chosen, but does not provide a code section. *See* Doc. No. 42-3. It further states that "[t]he City is also a party to a Memorandum of Understanding ("MOU") with the City's Police Officers Association," insinuating that the arbitrator may have been acting pursuant to that agreement in some capacity. *See* Doc. No. 42-3. The written decision pertaining to Plaintiff Duran's appeal states "[t]his proceeding . . . is pursuant to a memorandum of understanding (MOU) between the Calexico Police Officers Association (POA) and the City of Calexico (City)" and "city policies," yet Defendants do not provide a copy of a MOU that would have been in effect at that time nor delineate any relevant "city policies." *See* Doc. No. 42-4. The arbitrator also echoed the Court's uncertainty by stating, in a footnote, that "[a]lthough a 'tentative agreement' [signed in 2012] between the City of Calexico and Calexico Police Officers Association specifies that appeals such as this are to be made to an 'administrative law judge,' during this proceeding the parties have consistently referred to me as being an arbitrator." *See* Doc. No. 42-4.

Lastly—and based in large part on the fact that the Court cannot determine what rules or agreements governed the appeals—it is unclear what claims or defenses Plaintiffs

Duran and Uriarte could have litigated during those proceedings. Plaintiffs argue that the arbitrators would not have been able to adjudicate whether the City retaliated against them based on protected speech and conduct, but Plaintiffs do not explain why, and Defendants do not explain what authority governed the proceedings. Without more context regarding the parameters of the arbitration proceedings, the Court cannot resolve this issue. *See Taines v. Bear, Stearns & Co.*, 855 F.2d 862 (9th Cir. 1988) ("In the arbitration context, [] whether a ground of recovery 'could have been asserted' [for purposes of res judicata] depends on the scope of the parties' arbitration agreement.").

For the foregoing reasons, Defendants have not satisfied their burden to establish the preclusive effect of the decisions rendered in Plaintiffs' Uriarte and Duran's administrative appeals. The Court cannot make assumptions in order to fill the gaps in the factual record. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' Uriarte and Duran's section 1983 and MMBA claims on res judicata grounds without prejudice to Defendants raising the issue at a later junction in the proceedings such as in a motion for summary judgment.

### iii. *Meyers-Milias-Brown Act Claims*

"The MMBA has two stated purposes: (1) to promote full communication between public employers and employees, and (2) to improve personnel management and employer-employee relations." *El Dorado Cty. Deputy Sheriff's Ass'n v. Cty. of El Dorado*, 244 Cal. App. 4th 950, 956 (2016) (internal quotations omitted). Plaintiff alleges claims arising under section 3502 and 3506 of the Act. Specifically, section 3502 states, "public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." Cal. Gov. Code § 3502. Government Code section 3506 states, "public agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their rights under Section 3502." Cal. Gov. Code § 3506.

Defendants argue all of Plaintiffs' MMBA claims are subject to dismissal because there is no private right of action under the MMBA. In addressing Defendants' motion to dismiss the FAC, the Court declined to address this argument because it found Plaintiffs had not adequately pleaded compliance with the California Government Claims Act, and accordingly, dismissed all of Plaintiffs' state law claims without prejudice. Now, Defendants raise the argument again.[8] Specifically, Defendants argue that Plaintiffs must show there is a private right of action to sue for damages under the MMBA because the MMBA does not explicitly provide for such relief and the MMBA's legislative history does not reveal an intent to provide a private right of action. Plaintiffs counter that the California Supreme Court acknowledged a private right to sue in *Santa Clara County Counsel Attorneys Association v. Woodside*, 7 Cal. 4th 525 (1994), in which the Supreme Court stated that "in order to create a right to sue under the MMBA, [the Legislature] need not have included language concerning the right to sue within the act itself." *Id.* at 539. However, Defendants are correct that Plaintiffs take this quote out of context. Immediately following the above statement, the Supreme Court noted that the Legislature "endow[ed] the public employers and employees with substantive rights and duties" under the MMBA, and "allow[ed] employees to enforce those rights by means of traditional mandamus, under Code of Civil Procedure section 1085."[9] *Id.* Section 1085 allows courts to issue writs to "inferior tribunal[s] . . . to compel the performance of an act which the law specially enjoins." *Id.* Accordingly, *Santa Clara* does not stand for the

---

[8] Contrary to Plaintiffs' contention, Defendants may raise this argument again now despite that Defendants raised it initially in their motion to dismiss the original Complaint. In the Court's Order regarding Defendants' motion to dismiss the Complaint, the Court dismissed the MMBA claims on other grounds—namely, a lack of factual support. Thus, the Court did not foreclose further argument on the issue of whether the MMBA created a private right of action in noting that it was unconvinced that dismissal was required on those grounds based on the briefing before it at that stage.

[9] Now, depending on the type of employee, the California Public Employment Relations Board ("PERB") has exclusive jurisdiction over violations of the MMBA. *See* Cal. Gov. Code § 3509; *Coachella Valley Mosquito & Vector Control Dist. v. California Pub. Employment Relations Bd.*, 112 P.3d 623, 625 (2005). However, PERB does not have jurisdiction over peace officers such as Plaintiffs, presumably leaving them with only the traditional means of enforcement by mandamus—unless Plaintiffs can demonstrate otherwise. *See* Cal. Gov. Code § 3511; *see id.* at 625, n.1 (2005).

proposition that Plaintiffs have a private right to sue, let alone a right to sue for *damages*. In the SAC, Plaintiffs only request damages as relief for their MMBA claims. *See* SAC ¶¶ 77–78. Also, Plaintiffs' citation to *City of Hayward v. United Public Employees*, 54 Cal. App. 3d 761, in which a city sued a union pursuant to the MMBA for declaratory relief, is similarly unpersuasive for the proposition that Plaintiffs may sue for damages. *See also Coachella Valley*, 112 P.3d at 630 (reiterating that "MMBA-created rights and duties [are] enforceable by a traditional mandate action").

Defendants are correct that *"when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." See Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 133 (1997); *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 599 (2010). Accordingly, in the absence of persuasive legal authority or argument, Plaintiffs have not satisfied their burden of establishing that the MMBA provides a private right to sue for damages. *Cf. Aaron v. Aguirre*, No. 06-CV-1451-H (POR), 2006 U.S. Dist. LEXIS 90384, at *53–55 (S.D. Cal. Dec. 13, 2006); *Aaron v. Aguirre*, No. 06-CV-1451-H (POR), 2007 WL 959083, at *7 (S.D. Cal. Mar. 8, 2007).[10] Because Plaintiffs have had multiple opportunities to amend these claims, and multiple opportunities to argue against their dismissal, further amendment would be futile. Thus, the Court **GRANTS** Defendants' motion to dismiss all of Plaintiffs' claims premised on violations of the MMBA, and **DISMISSES** those claims with prejudice because allowing further amendment would be futile.

---

[10] In *Aaron v. Aguirre*, the plaintiffs alleged violations of the *public policy* embodied in the MMBA, as opposed to asserting violations of the MMBA itself as Plaintiffs have here. The *Aaron* court concluded that the plaintiffs' had not demonstrated that there was "a right of action based upon a public policy violation" because they had not "directed the Court to any legal authority supporting a private right of action under the MMB Act." *See Aaron*, 2006 U.S. Dist. LEXIS 90384, at *54–55. Thus, the case, while distinguishable, is persuasive for the propositions that the Plaintiffs' carry the burden in establishing a private right of action exists, and that there is a lack of legal authority recognizing a private right of action under the MMBA.

iv.     *Defamation and False Light Claims*

Plaintiffs assert causes of action for defamation and false light against Defendant Bostic.  Defendant Bostic moves to dismiss all of Plaintiffs' causes of action for defamation and false light on the grounds that he is immune from liability for his statements pursuant to California Government Code sections 821.6 and 820.2, and California Civil Code section 47(a).

a.      *Government Code § 821.6*

California Government Code section 821.6 states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  While multiple California Courts of Appeal have interpreted this statute broadly to include immunity from liability for claims aside from malicious prosecution, such as defamation, the California Supreme Court has interpreted section 821 as confined to malicious prosecution claims.  *See Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) (citing *Sullivan v. County of Los Angeles*, 527 P.2d 865, 871 (Cal. 1974)).  Accordingly, the Ninth Circuit has concluded that because federal courts are "bound by the decision of the highest state court" when interpreting issues of state law, the California Supreme Court's decision in *Sullivan* controls despite contrary Courts of Appeal opinions.  *See Garmon*, 828 F.3d at 847 (quoting *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991)); *see also Winger v. City of Garden Grove*, --- Fed. Appx. ----, 2017 WL 1854694, at *2 (9th Cir. May 8, 2017) (declining to apply section 821.6 to a negligence claim because it "applies only to malicious prosecution actions").

Here, Plaintiffs do not allege malicious prosecution, but rather, defamation and false light claims.  Accordingly, Defendant Bostic does not enjoy immunity from those claims under section 821.6, and the Court declines to dismiss Plaintiffs' claims on such grounds.

//

//

### b. Government Code § 820.2

California Government Code section 820.2 provides for "discretionary act immunity." *See Barner v. Leeds*, 13 P.3d 704, 709 (Cal. 2000). Specifically, section 820.2 states that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *See* Cal. Gov. Code § 820.2. In determining whether an employee enjoys immunity from liability for certain acts, courts consider "whether the acts or omissions of the particular employee resulted from the exercise of discretion within the meaning of section 820.2." *See Barner*, 13 P.3d at 709. "The scope of immunity under § 820.2 is somewhat limited, however," as "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1107 (N.D. Cal. 2011) (quoting *Barner*, 13 P.3d at 709). Rather, immunity is reserved for "quasi-legislative policy-making" decisions "as to which judicial interference would [] be 'unseemly'" and potentially chill "the coordinate body's decision-making process." *See Barner*, 13 P.3d at 709 (citing *Caldwell v. Montoya*, 897 P.2d 1320, 1325–26 (Cal. 1995)). "[T]here is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." *Id.*

Accordingly, the California Supreme Court distinguishes between "ministerial" or "operational" decisions, which receive no immunity, and "planning" decisions—those "deliberate and considered policy decisions, in which a 'conscious balancing of risks and advantages took place'"—which do receive immunity. *Caldwell*, 897 P.2d at 1326 (quoting *Johnson v. State of California*, 447 P.2d 352, 361, n.8 (Cal. 1968)) (internal alterations omitted). The party asserting immunity must actually "make a showing that such a policy decision, consciously balancing risks and advantages, took place." *See Johnson*, 447 P.2d at 361, n.8. "The fact that an employee normally engages in

'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.*

Defendant Bostic does not argue that he made a policy decision in making the allegedly tortious statements, or that he had consciously balanced the risks and advantages prior to making those statements. Rather, without describing the relevant facts of the instant case, Defendant states that "under the same circumstances," the Northern District of California and a California Court of Appeal applied section 820.2 immunity to statements made to the press. *See* Doc. Nos. 42-1, 48 (citing *Harmston v. City and Cty. of San Francisco*, No. C 07-01186 SI, 2007 WL 2814596 (N.D. Cal. Sept. 25, 2007) and *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (1999)). Thus, Plaintiff is correct that, regarding section 820.2 immunity, "Bostic does not make any argument at all about how [section 820.2] appl[ies] to this case; rather he simply mentions immunity with no analysis." *See* Doc. No. 44. In *Harmston* and *Ingram*, the courts relied on the particular facts of those cases. *See Harmston*, 2007 WL 2814596, at *6 (relying on "the context in which [the defendant] made her decision"). Also, in *Harmston*, the court concluded that it could not apply section 820.2 immunity to conduct giving rise to other causes of action because "a nuanced examination" of the "nature of the particular action at issue [and the] context of the decision-maker's position" could not be made "on the bare pleadings" before the court. *Id.* at *5 (declining to apply immunity despite that the "chief of police undoubtedly exercises a great deal of discretion as a result of her position"). The court stated it may be necessary to revisit the issue upon the filing of a motion for summary judgment. *Id.* In fact, the Ninth Circuit has indicated that it may be inappropriate for courts to find discretionary act immunity applies at the pleadings stage. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 640 (9th Cir. 2012); *see also United Motors Int'l, Inc. v. Hartwick*, No. CV 17-00243 BRO (EX), 2017 WL 888304, at *9 (C.D. Cal. Mar. 6, 2017) (concluding that it could not find, "based merely on the pleadings before it, that the Government Defendants [were] absolutely immune").

Further, in *Ingram*—the only other case that Defendant Bostic relies on—the California Court of Appeal relied solely on section 821.6 in deciding that a district attorney was immune from liability for certain statements. *See Ingram*, 74 Cal. App. 4th at 1291–93. The *Ingram* court relied exclusively on cases analyzing the applicability of section 821.6, and cited to section 820.2 only to state that "if section 821.6 applies, so also does section 820.2." *See id.* As the Court stated above, reliance on section 821.6 in any actions aside from malicious prosecution actions is misplaced.

Even were the Court to look to the typical job duties of a police chief, the Court could not resolve the issue of discretionary act immunity because "an employee's normal job duties are not determinative." *See AE ex. rel Hernandez*, 666 F.3d at 640 (citing *Johnson*, 447 P.2d at 361, n.8). Rather, Defendant has the burden to demonstrate his "specific policy decision" was made after "consciously balanc[ing] the decision's risks and benefits." *Id.* Here, Defendant does not present any evidence or argument regarding the context or nature of his decisions to make the allegedly tortious statements. Further, the SAC does not satisfy Defendant's burden. It only provides the allegedly tortious statements and an allegation that Defendant made those statements at a "November 19, 2014 Press Conference." *See* SAC, Doc. No. 39, ¶ 31. The Court is unaware, for example, of who called the press conference, when they did so, for what purpose, or whether Defendant Bostic was acting in his capacity as Chief of Police when he spoke at the press conference.

For the foregoing reasons, Defendant has failed to demonstrate that he is entitled to immunity pursuant to section 820.2, which the Court must construe narrowly. *See AE ex. rel Hernandez*, 666 F.3d at 639–40 (stating that the California Supreme Court has "instruct[ed] [courts] to construe the scope of the discretionary act immunity as narrowly as possible to preserve the separation of powers").

       *c.*    *Civil Code § 47(a)*

Lastly, Defendant argues he is immune from liability pursuant to California Civil Code section 47(a). Section 47(a) states that a "publication or broadcast" is privileged if

made "in the proper discharge of an official duty."[11]  *See* Cal. Civ. Code § 47.  "The California Supreme Court defines such statements as those made in the discharge of an official duty that are related to a policy-making function." *McQuirk v. Donnelley,* 189 F.3d 793, 801 (9th Cir. 1999) (citing *Saroyan v. Burkett*, 371 P.2d 293, 295–96 (1962)). "This requirement that the statements at issue be related to the exercise of a policy-making function is closely related to the inquiry into whether an official was acting at a planning, as opposed to an operational, level under § 820.2." *Id.*; *see also Sanborn v. Chronicle Publ'g Co.*, 556 P.2d 764 (1976); *ECO Res., Inc. v. City of Rio Vista*, No. 2:05CV2556-GEB-DAD, 2006 WL 947763, at *2–3 (E.D. Cal. Apr. 12, 2006) ("The inquiries under both section 47(a) and 820.2 are closely related.").  "To be engaged in exercise of his policy-making function the official must reach a basic policy decision, as distinct from an operational decision, after balancing the risks and advantages." *McQuirk v. Donnelley,* 189 F.3d at 801 (quoting *Neary v. Regents of the Univ. of Cal.*, 185 Cal.App.3d 1136 (1986)).  It is the party asserting immunity that bears the burden of establishing entitlement to immunity under section 47(a).  *ECO Res., Inc.*, 2006 WL 947763, at *3.

Based on the foregoing, the same deficiencies detailed above regarding section 820.2 immunity apply equally to immunity under section 47(a) in this case.  Further, Defendant's citation to a few provisions of the Calexico Police Department Policy manual does not suffice to establish his immunity under section 47(a).  Specifically, Defendant cites to a provision that states that the Chief of Police has the "ultimate authority and responsibility for the release of information to the media." *See* Doc. Nos. 7-8, 42.  However, just because Defendant Bostic may have had the authority to speak with the press as interim Chief of Police, it does not necessarily follow that Defendant

---

[11] So-called official duty immunity has always been available to high-ranking state and federal officials, but may also be available to lower level state and local officials in some circumstances. *See Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604, 614 (2006) (citing *Royer v. Steinberg*, 90 Cal. App. 3d 490 (1979)).

"was exercising his policy-making function and was acting within the scope of his official duties" in deciding to speak at the November 2014 press conference or in deciding what to say. *See ECO Res., Inc.*, 2006 WL 947763, at *3 (quoting *Neary*, 185 Cal.App.3d at 1141); *cf. Sanborn*, 556 P.2d at 769.[12] Lastly, the Court finds unpersuasive Defendant's argument that Plaintiffs have admitted that section 47(a) immunity applies because the SAC alleges that "[i]n doing the things alleged herein . . . [Defendant Bostic] acted . . . as an official policy-maker." *See* Doc. Nos. 42, 48; *see Neary*, 185 Cal.App.3d at 1141–42 (stating that—even in an affidavit filed in support of a motion for summary judgment—a bare legal conclusion that one made a "policy decision" is insufficient to establish immunity). Accordingly, and for the additional reasons listed above regarding section 820.2, Defendant Bostic has not established that he is entitled to immunity under section 47(a).

In sum, the Court is unpersuaded that Defendant Bostic is immune under California Government Code sections 821.6 or 820.2, or California Civil Code section 47(a). As such, the Court **DENIES** Defendant Bostic's motion to dismiss Plaintiffs' claims for defamation and false light on those grounds.

## C. Motion to Strike Pursuant to Section 425.16

Defendants move to strike Plaintiffs' state law claims under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. *See* Doc. No. 29. Because the Court dismisses Plaintiffs' claims arising under the MMBA with prejudice, as discussed above, the Court focuses only on Defendants' request to strike Plaintiffs' defamation and false light claims against Defendant Bostic.

---

[12] In *Sanborn*, the Supreme Court of California stated that it could not conclude that the county clerk's decision to make allegedly defamatory statements to the press was a "basic policy decision made at the planning stage of [the] City's operations," despite that the clerk had the discretion to discuss the subject matter with the press. *Id.* The court stated that "[a] governmental officer's discussions with the public or press regarding the functioning of his office would seem, instead, to fall within the category of those routine, ministerial duties incident to the normal operations of that office." *Id.* Courts have since applied the reasoning in *Sanborn*, a decision based on section 820.2 immunity, in deciding whether section 47(a) immunity applies. *See e.g.*, *McQuirk*, 189 F.3d at 801; *Neary*, 185 Cal.App.3d at 1141–42.

"Resolution of an anti-SLAPP motion requires the court to engage in a two-step process." *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 740 (Cal. 2003) (internal citations and quotations omitted). First, the defendant must make a "threshold showing that the challenged cause of action is one arising from protected activity." *Id.* Second, the plaintiff must demonstrate a reasonable probability of prevailing on the claim. *Id.*; *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the motion to strike must be denied. Cal. Civ. Proc. Code § 425.16(b)(1).

### i. Protected Activity

The Court first inquires as to what activities form the basis for Plaintiffs' causes of action. *See Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013). Here, Plaintiffs' defamation and false light claims are premised on multiple statements that Defendant Bostic made at a press conference. Then, the Court determines whether those activities are "protected" under the anti-SLAPP statute, meaning that they "arise from an act in furtherance of the defendant's rights of petition or free speech" "in connection with a public issue." *See id.* (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)) (internal alteration omitted); *Wallace v. McCubbin*, 128 Cal. Rptr. 3d 205, 218 (Cal. Ct. App. 2011). "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal.4th 82, 89 (Cal. 2002) (emphasis in original). To make this determination, "a court considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *City of Cotati v. Cashman*, 52 P.3d 695, 702 (Cal. 2002) (citing Cal. Civ. Proc. Code 425.16(b)) (internal quotations omitted).

The SAC alleges Defendant Bostic stated that some City Council members and members of the CPOA have been using "city funds and city resources" to run an "extortion racket." SAC ¶ 31. He allegedly stated that some members of the prior investigation unit of the police department spent thousands of dollars on surveillance

equipment, but when questioned, the investigations unit reported to Defendant Bostic that they had no current investigations. Defendant purportedly stated that the CPOA and Council Members were "using all this equipment to go around tracking, voice recording, taking pictures, trying to get them in compromising positions; Like the Mafioso of New York." SAC ¶ 34. Also, the SAC alleges that Defendant Bostic stated that he was attempting to clean up the mess caused by the former Chief and former staff, and that the evidence of improper conduct is "in the hands of the FBI." SAC ¶ 34. Plaintiffs allege Defendant Bostic referred to the subjects of his statements as "[t]hese few thugs who think they can be criminals wearing a badge." SAC ¶ 34.

Defendant Bostic argues his statements are protected under the anti-SLAPP statute because "[t]his lawsuit targets protected activity concerning issues of public interest (the conduct of police officers)," such as "improper conduct, corruption, and mismanagement within the Police Department." *See* Doc. No. 43-1. The anti-SLAPP statute defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as including an "oral statement . . . made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *See* Cal. Civ. Proc. Code § 425.16(e)(3), (4). Courts "must construe 'public issue or issue of public interest' in section 425.16(e)(4) broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence." *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010).

Because Defendant Bostic's alleged statements pertain to widespread corruption and wrongdoing within a police department, Bostic has satisfied his burden under the first prong by establishing that the activities forming the basis for Plaintiffs' defamation and false light causes of action are protected. *See Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050–51 (E.D. Cal. 2008) (stating that news articles, newsletters, and press

releases constitute public forums and how public funds are used is an issue of public interest); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 483 (2015) (stating that allegedly defamatory statements that a pastor misused donations and molested a child were of interest to the community made up of the pastor's church's members). Defendant's alleged statements would undoubtedly interest residents of the community of Calexico. Further, according to the SAC, the statements were linked to a controversy—namely, the alleged overhaul of prior police department management and the department's alleged prior corruption and misuse of funds. *See Grenier*, 234 Cal. App. 4th at 482 (stating that where conduct affects a community, "*i.e.*, a limited but definable portion of the public," the protected activity must "be connected to a discussion, debate or controversy"). Plaintiff's citation to *Garcetti v. Ceballos* for the proposition that "public employees who make statements pursuant to their job duties are not entitled to First Amendment protection for those statements" is unpersuasive. *See* Doc. No. 45 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). In *Garcetti*, the Ninth Circuit did not address whether public employees acting in their official capacities may be liable for defamation or false light. Rather, the Ninth Circuit held that "[w]hen public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications *from employer discipline*." *See Garcetti*, 547 U.S. 410 at 410 (emphasis added). Further, the California Supreme Court has explicitly concluded that California's anti-SLAPP statute's protection "extend[s] to statements by public officials or employees acting in their official capacity." *Vargas v. City of Salinas*, 205 P.3d 207 (Cal. 2009). Accordingly, Defendant Bostic has established that the activities giving rise to Plaintiffs' defamation and false light claims are protected under California's anti-SLAPP statute.

  ii. *Probability of Prevailing*

   Because Defendant Bostic has sufficiently demonstrated the challenged causes of action arose from Bostic's protected activity, the burden shifts to Plaintiffs to establish a reasonable probability of prevailing on their defamation and false light claims. "To

determine whether the plaintiff has made this showing, the court considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Graham-Sult*, 756 F.3d at 740-41 (citing Cal. Civ. Proc. Code § 425.16(b)(2)) (internal quotations omitted). "Under this standard, the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)) (internal quotations omitted). Courts do not "weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim," however, but rather, courts "should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *See Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182–83 (9th Cir. 2013) (quoting *Vargas v. City of Salinas,* 46 Cal.4th 1, 20, 92 Cal.Rptr.3d 286, 205 P.3d 207 (2009)).

Defamation and false light are governed in part by state law, and in part by constitutional considerations. Under California law, defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Makaeff*, 715 F.3d at 264 (citing *Ringler Assocs., Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165 (2000)) (internal quotations omitted). Section 46 of the California Civil Code defines slander as:

> [A] false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:
> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
> [ . . . ]
> 2. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with

15cv1606-MMA (PCL)

reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

[. . .]

5. Which, by natural consequence, causes actual damage.

Cal. Civ. Code § 46.

False light invasion of privacy requires a public disclosure, which places plaintiff in a false light in a manner highly offensive to a reasonable person. *See Fellows v. National Enquirer*, 721 P.2d 97, 99–100 (Cal. 1986). "When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers*, 8 Cal. Rptr. 2d 802, 823, n.13 (Cal. Ct. App. 1999) (internal citations omitted); *see also Time, Inc. v. Hill*, 385 U.S. 374 (1967); *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1213 (S.D. Cal. 2010) ("[I]n California, false light invasion of privacy is equivalent to libel.").

Under California law, a plaintiff must prove the defendant acted with at least negligence in order to recover actual damages. *Khawar v. Globe Intern., Inc.*, 965 P.2d 696, 708 (Cal. 1998); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–48 (1974) (stating that each state determines the requisite fault where a plaintiff is a private figure). However, if a plaintiff is a public official or public figure, the Constitution requires the plaintiff to prove the defendant acted with actual malice—*i.e.*, either with knowledge of the statement's falsity or with reckless disregard for its truth—to recover actual damages. *See Gertz*, 418 U.S. at 342–43; *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

Here, as police officers, Plaintiffs were public officials under California law. "[T]he majority of courts have concluded that the public's interest in the activities of peace officers at every level is such that, for purposes of defamation law, peace officers are public officials who must establish actual malice in order to prevail on a defamation claim." *See e.g.*, *Comm'n on Peace Officer Standards and Training v. Superior Court*, 165 P.3d 462, 474 (Cal. 2007) (compiling cases concluding that police officers are public

officials for purposes of defamation claims); *Rattray v. City of Nat'l City*, 51 F.3d 793, 800 (9th Cir. 1994). Thus, in order to avoid dismissal, Plaintiffs must demonstrate "a reasonable probability of proving, by clear and convincing evidence," that Defendant Bostic made his allegedly tortious statements with actual malice. *See Makaeff*, 715 F.3d at 271.

Plaintiffs do not argue that they need not prove actual malice in order to succeed on their defamation and false light claims. Rather, in their opposition to Defendants' motion to strike, Plaintiffs argue the SAC is sufficient to show actual malice because Defendant Bostic made "false statements . . . knowing them to be false," which "satisfies the pleading requirements." *See* Doc. No. 45. However, the SAC is wholly insufficient to demonstrate a reasonable probability that they will be able to prove by clear and convincing evidence that Defendant Bostic acted with actual malice. In fact, the SAC does not allege Defendant Bostic knew that any of his statements were false, except for his statement that "no cases were being worked," as the SAC alleges that Defendant "[was] well aware of the case loads." *See* SAC ¶ 35. This conclusory allegation, on its own, is insufficient to show a reasonable probability of success, even on a defamation claim premised only on that statement. Further, the SAC does not allege Defendant Bostic had reckless disregard for the veracity of his statements, let alone state facts in support of such a conclusion. Conclusory blanket allegations such as that, "[i]n doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of Plaintiffs' rights" are likewise insufficient to show probability of proving actual malice. *See* SAC ¶ 84. Accordingly, the SAC does not satisfy even basic pleading standards under Federal Rules of Civil Procedure 8 and 12(b)(6).

Further, Plaintiffs produce no evidence pertinent to actual malice. Plaintiffs contend that, "[a]lthough not necessary, declarations were previously provided by Plaintiffs Casillas and Bielma addressing the probability of success on the merits, as to their state law causes of action." *See* Doc. No. 45. Presumably, Plaintiffs are referring to

declarations submitted with their opposition to Defendants' motion to strike Plaintiffs' original Complaint. *See* Doc. Nos. 15-9, 15-10, 10-11. Plaintiff Casillas's declaration summarizes Defendant Bostic's allegedly unlawful statements, and states that "[t]hese assertions are false." *See* Doc. No. 15-10. However, the declaration does not state that Defendant Bostic knew that the statements were false or that he made them with reckless disregard for the truth. Further, the declaration does not state any facts that would support such conclusions. Also, Bielma's declaration does not mention Defendant Bostic's alleged statements, so it is unclear how it is relevant to actual malice.

For the above reasons, Plaintiffs have failed to establish "a reasonable probability of proving, by clear and convincing evidence," that Defendant Bostic made his allegedly tortious statements with actual malice. *See Makaeff*, 715 F.3d at 271. Thus, Plaintiffs fail to demonstrate a reasonable probability of prevailing on their defamation and false light claims. *Cf. Alszeh v. Home Box Office*, 67 Cal. App. 4th 1456, 1464 (1998) (stating that "when a [false light] invasion of privacy claim rests on the same allegations as a claim for defamation, the former cannot be maintained as a separate claim if the latter fails as a matter of law."). Accordingly, the Court **GRANTS** Defendants' motion to strike Plaintiffs' defamation and false light claims. As such, the Court also **DENIES** Plaintiffs' request for attorneys' fees, as the Court does not find Defendants' motion to strike to be frivolous.

Lastly, the Court **DENIES** Plaintiffs' request for limited discovery. Plaintiffs do not describe for what purpose they wish to conduct limited discovery aside from "substantiat[ing] any perceived defect," nor describe what type of discovery they wish to take, nor what relevant evidence they believe they could uncover in conducting such discovery. Further, Plaintiffs have had multiple opportunities to amend all of their claims, and Plaintiffs' defamation and false light claims do not satisfy even basic pleading standards.

//

//

## COSTS AND FEES

Defendants request an award of attorney's fees and costs pursuant to section 425.16(c)(1), and request leave to file further briefing regarding the proper amount. A prevailing defendant on a motion to strike "shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). The Court **GRANTS** Defendants' request and sets the following briefing schedule:

1. Defendants must file a supporting declaration of counsel outlining the basis for the fees and costs incurred on or before **June 12, 2017**. Defendants' brief must not exceed **15 pages**, excluding exhibits.

2. Plaintiffs may file a response to Defendants' declaration, if any, on or before **June 26, 2017**. Plaintiffs' response must not exceed **8 pages**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, as set forth above, and **GRANTS** Defendants' motion to strike as to Plaintiffs' defamation and false light claims.

**IT IS SO ORDERED.**

Dated: May 25, 2017

HON. MICHAEL M. ANELLO
United States District Judge